**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

PEOPLE v CARSON

Docket No. 166923. Argued April 10, 2025 (Calendar No. 3). Decided July 31, 2025.

Michael G. Carson was convicted in the Emmet Circuit Court of safebreaking, MCL 750.531; larceny of property with a value of $20,000 or more, MCL 750.356(2)(a); receiving or concealing stolen property with a value of $20,000 or more, MCL 750.535(2)(a); larceny from a building, MCL 750.360; and accompanying conspiracy charges, MCL 750.157a, after a jury concluded that he had stolen money and personal property from his neighbor, Don Billings. Billings had granted defendant and his girlfriend, Brandie DeGroff, access to his house in August 2019 so they could help him sell some items online, but he later noticed that some valuable items were missing from his bedroom and that his safes had been emptied of their contents, which included approximately $60,000 in cash. After a police investigation, defendant was arrested and his cell phone was seized. The police obtained a warrant to search the phone's contents and discovered incriminating text messages between defendant and DeGroff. Defense counsel moved before trial to suppress the introduction of these messages into evidence on the basis that the seizure of defendant's phone without a warrant violated the Fourth Amendment, and the trial court, Charles W. Johnson, J., denied the motion. Defendant was sentenced to 10 to 20 years in prison for safebreaking, 9 to 20 years in prison for both larceny of property and receiving or concealing stolen property, and 3 to 15 years in prison for larceny from a building, plus a prison term for each conspiracy conviction that matched the sentence for its underlying offense. After filing his appeal as of right, defendant also moved for a new trial, alleging that counsel had been ineffective by, among other things, failing to challenge the adequacy of the search warrant. The court, Jennifer Deegan, J., denied the motion after holding a hearing pursuant to *People v Ginther*, 390 Mich 436 (1973), and defendant's appeal proceeded. The Court of Appeals, MALDONADO, J., and HOOD, P.J. (HOOD, P.J., concurring, and REDFORD, J., dissenting), reversed defendant's convictions, holding that the search warrant was insufficiently particular because it authorized a general search of the phone's contents. ___ Mich App ___ (February 15, 2024) (Docket No. 355925). The majority further held that the good-faith exception to the exclusionary rule did not apply and that trial counsel was constitutionally ineffective for failing to seek exclusion of the cell phone's contents on the ground that the search warrant was unconstitutionally broad. The prosecution sought leave to appeal in the Supreme Court, which granted the application. ___ Mich ___; 11 NW3d 269 (2024).

In an opinion by Chief Justice CAVANAGH, joined by Justices WELCH and THOMAS, and an opinion by Justice BOLDEN, the Supreme Court *held*:

The Court of Appeals correctly held that the search warrant at issue was insufficiently particular to satisfy the requirements of the Fourth Amendment. While the first sentence of the warrant contained some arguably limiting language that referred to the crimes under investigation, it did not provide a meaningful affirmative limitation on the remaining sentences, one of which allowed a search for "any and all data." Given that cell phones carry a virtually unlimited amount of private information, the wide-ranging search of defendant's cell phone pursuant to this warrant was constitutionally intolerable. To satisfy the particularity requirement of the Fourth Amendment, a search warrant should be as particular as the circumstances presented permit and consistent with the nature of the item to be searched. Specifying the crime under investigation is necessary, but not usually sufficient to ensure adequate particularity in the context of a cell-phone search warrant. The need for specificity about the types of data expected to be encountered and searched must be weighed against the fact that law enforcement often will not be certain what evidence exists and where it will be located; however, this does not free law enforcement from the obligation to provide the most specific description possible and to support a request to search each category of data mentioned in a warrant affidavit, nor does it permit magistrates to approve boundless searches of electronic data when the information available provides a basis for a more reasonably tailored search. When information concerning the relevant time frame of the criminal activity exists, this time limitation should be included in the search warrant to ensure adequate particularity.

In an opinion by Chief Justice CAVANAGH, joined by Justices WELCH and THOMAS; an opinion by Justice ZAHRA; and an opinion by Justice BERNSTEIN, the Supreme Court *held*:

The Court of Appeals erred by concluding that defendant was entitled to relief on the basis that his counsel provided ineffective assistance under the standard set forth in *Strickland v Washington*, 466 US 668 (1984), and the Court of Appeals judgment was reversed in that respect.

Court of Appeals judgment affirmed in part and reversed with respect to Part II(B)(3); case remanded to the Court of Appeals for consideration of defendant's remaining issues.

Chief Justice CAVANAGH, joined by Justices WELCH and THOMAS, further stated that defendant did not show that his counsel's performance was constitutionally deficient, noting that the application of Fourth Amendment principles in the cell-phone and digital-data sphere is a rapidly evolving area of the law. She noted that *People v Hughes*, 506 Mich 512 (2020), in which the Court first discussed particularity in the context of a cell-phone search, was not decided until more than six months after counsel filed his unsuccessful motion to suppress. While hindsight, the Court's decision in *Hughes*, and five additional years of technological advances and court decisions might have rendered the lack-of-particularity argument an obvious basis for a motion to suppress, the record supports the conclusion that counsel's decision to file a motion to suppress on a different ground was not based on a misunderstanding of the law as it existed at the time and could be fairly characterized as an exercise of reasonable professional judgment under the facts and circumstances that existed when the decision was made.

Justice ZAHRA, concurring in the result only, agreed that defendant had not shown ineffective assistance of counsel. He therefore concurred in the decision to partially reverse the Court of Appeals judgment, but he would have reached that conclusion on the ground that defendant failed to show prejudice from counsel's alleged unprofessional error. He wrote separately to express disagreement with the decision to address the Fourth Amendment particularity issue given that it was unpreserved and raised only indirectly through defendant's ineffective-assistance argument, which Justice ZAHRA believed rendered the resulting analysis at best dicta and at worst an unconstitutional advisory opinion. He further noted that, given the lead opinion's conclusion that counsel need not have raised an objection regarding particularity in order to provide constitutionally adequate representation, there was no reason to reach the merits of the particularity issue, and he stated that doing so exceeded the Court's authority. He also disagreed with the lead opinion's conclusion regarding particularity, stating that the warrant satisfied the Fourth Amendment's particularity requirement under the weight of established caselaw because it limited the scope of the cell-phone search to evidence of specific offenses, and he further stated that the proper inquiry would have been whether law enforcement reasonably directed their efforts toward uncovering evidence of the crimes specified in the warrant.

Justice BERNSTEIN, concurring in the result, agreed with the lead opinion's decision to reverse the judgment of the Court of Appeals on the basis that defendant's ineffective-assistance-of-trial-counsel claim fails. Justice BERNSTEIN wrote separately because he disagreed with the decision to reach the question whether the search warrant was sufficiently particular given that the issue was unpreserved and that the case was resolved on the threshold issue of ineffective assistance of trial counsel. He disagreed that the particularity issue was germane to the lead opinion's holding regarding ineffective assistance given its conclusion that defense counsel was not unreasonable for failing to raise the issue. Noting that the lead opinion's input on the particularity issue could not have influenced the outcome of the case, he characterized that analysis as categorically dictum. He stated that, while he did not necessarily disagree with the lead opinion's analysis of the particularity issue, he would have refrained from addressing that issue until the Court was presented with a case in which its resolution would have the force of law.

Justice BOLDEN, concurring in part and dissenting in part, agreed with the analysis and conclusion of the lead opinion regarding the Fourth Amendment particularity requirement, but she disagreed with its conclusion that defense counsel's decision to not challenge the evidence obtained from an insufficiently particular search warrant was reasonable. She stated that the Court of Appeals majority applied the proper analysis and reached the appropriate conclusion, which is that defense counsel's failure to seek suppression of the cell phone's contents was based on a misunderstanding of the law rather than trial strategy. She also agreed with the Court of Appeals majority that defendant showed a reasonable probability that the result of the proceeding would have been different had trial counsel moved to suppress the text messages. Further, she would have affirmed the Court of Appeals' holding that the good-faith exception to the exclusionary rule did not apply because the warrant at issue was so facially deficient that no reasonable officer could have relied on it in objective good faith. She would also have concluded that the severance doctrine was inapplicable because, given that the entire search warrant failed to satisfy the particularity requirement of the Fourth Amendment, there were no constitutional categories or valid portions of the search warrant that could have been severed. Accordingly, while she agreed with the analysis

and conclusion in Part III of the lead opinion, she dissented from Part IV(C) and would have affirmed the Court of Appeals' decision in full.

Justice HOOD did not participate because the Court considered this case before he assumed office and because he was on the Court of Appeals panel.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 31, 2025

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                      No. 166923

MICHAEL GEORGIE CARSON,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH (except HOOD, J.)

CAVANAGH, C.J.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized*." US Const, Am IV (emphasis added). At issue in this case is whether a search warrant obtained by police officers to search defendant's cell phone violated the particularity requirement of the Fourth Amendment. We hold that it did. However, defendant raises this claim by way of a Sixth Amendment

claim of ineffective assistance of counsel, and we conclude that defendant has not established that he received constitutionally ineffective assistance of counsel under the standard set forth in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Therefore, while we agree with the Court of Appeals on the underlying merits, we disagree that defendant is entitled to reversal of his convictions on this basis. Accordingly, we reverse the judgment of the Court of Appeals in that regard, and we remand this case to the Court of Appeals to consider defendant's remaining issues.

## I. FACTS

Defendant, Michael Carson, was convicted by a jury of safebreaking, MCL 750.531; larceny of property with a value of $20,000 or more, MCL 750.356(2)(a); receiving or concealing stolen property with a value of $20,000 or more, MCL 750.535(2)(a); larceny from a building, MCL 750.360; and accompanying conspiracy charges, MCL 750.157a.[1]

---

[1] In his appeal of right, defendant argued that his convictions of both larceny and receiving or concealing stolen property violated his double-jeopardy rights. *People v Carson*, ___ Mich App ___, ___; ___ NW3d___ (February 15, 2024) (Docket No. 355925); slip op at 7. The Court of Appeals majority agreed, holding, over a dissent from Judge REDFORD, that the constitutional protections against double jeopardy would bar defendant from being reconvicted of both these counts, as well as both corresponding conspiracy charges, if defendant were to be retried. *Id*. at ___, ___; slip op at 10, 18. The prosecution did not appeal the panel's double-jeopardy ruling, so we express no opinion on that part of the Court of Appeals' opinion, as it is not properly before the Court. We note that, should the Court of Appeals on remand reject defendant's additional challenges to his convictions, the proper remedy for the unchallenged double-jeopardy violation is to vacate defendant's convictions of receiving or concealing stolen property and conspiracy to commit that crime. See, e.g., *People v Wafer*, 509 Mich 31, 50-51; 983 NW2d 315 (2022).

These charges were filed after defendant and his girlfriend and accomplice, Brandie DeGroff,[2] were accused of stealing from their neighbor, Don Billings.

In August 2019, Billings underwent back surgery and moved out of his home because of mobility issues. He solicited defendant's and DeGroff's help in selling household items online so that he could downsize his possessions. In exchange, Billings agreed that defendant could keep 20% of the proceeds. Billings told defendant what items he wanted to sell, gave defendant a house key,[3] and granted him access to the home.

Billings testified that he was a collector of many items. He also had two large safes that he kept in a "shop room" where he stored documents and valuables such as collectible coins and silver certificates. Inside one of the large safes, Billings had a smaller fireproof safe where he stored approximately $60,000 in yellow-banded stacks of hundred-dollar bills. A couple of months after the arrangement with defendant and DeGroff began, Billings noticed that collectible coins and rolls of wrapped quarters were missing from his bedroom. Although defendant and DeGroff denied taking the missing items, Billings asked them to return his house key, and the broker arrangement ended. Billings believed that defendant and DeGroff had returned all his property.

In late November 2019, Billings attempted to open his safes but could not get the combinations to work. With the help of a locksmith, the safes were unjammed.[4] Billings

---

[2] DeGroff pleaded guilty to conspiracy to commit larceny of property with a value of $20,000 or more, MCL 750.356(2)(a), in exchange for the dismissal of several other charges. She was sentenced to three years' probation.

[3] Billings testified that there was one other spare house key but that it was hidden.

[4] At trial, the locksmith explained that the safe could be opened with either a combination or a key. If the keylock was engaged, the combination alone could not open the safe. The

3

discovered that "every bit" of his cash was gone, along with silver certificates, coins, and silver bars. Upon this discovery, Billings notified the Michigan State Police, and an investigation ensued. Billings testified that only defendant and DeGroff had access to the safes and that he had not given them permission to open them or sell their contents.

Accordingly, the criminal investigation turned to defendant and DeGroff. Defendant was arrested on February 26, 2020, at which point his cell phone was also seized. The police obtained a warrant to search the phone's contents and discovered text messages exchanged between defendant and DeGroff. Those texts stated:[5]

> *Defendant:* Don and Judy were investors in the stock market, complete records for hundreds of thousands of dollars.

> *DeGroff:* Wow that's crazy. Have you found any records of what's in the space yet?

> *Defendant*: In the, what, yet?

> *DeGroff*: Lol, . . . safe[.]

> *Defendant*: No. I'm guessing it's all on the computer.

> \* \* \*

> *Defendant*: We need to go through those pennies. If there's a 1943 copper penny in there, it's worth millions, these people said. Also, the 1943s pennies can go for . . . $20,000 each.

> *DeGroff*: Holly Molly! [sic] That's a lot . . . of money.

---

locksmith surmised that someone had locked the safe with a key, which was why Billings could not open the safe with the combination. Billings testified that he always used the combination but that keys to the safe "could be" somewhere in the house.

[5] These texts were read into the record by a detective. Defendant does not dispute the accuracy of the detective's recitation of the text messages, and so we rely on his representation of the messages for present purposes.

4

*Defendant*: I'm thinking that these guys cashed out stocks, and whatnot, and converted to cash and gold and silver in the safes.

\* \* \*

*Defendant*: These are the keys that you're thinking are safe keys, I think that these are lockbox keys from a bank.

*DeGroff*: Might be.

\* \* \*

*Defendant*: I'm totally confused. Does he not know there's a million dollars in those safes?

*DeGroff*: I really don't think he does. I think he opened it up, . . . threw that money in there and closed it.

\* \* \*

*Defendant*: It amazes me that he's worried about a few rolls of coins and never went into the safes.

*Defendant*: Should we be worried now?

\* \* \*

*Defendant*: He must've tried to get into the safe and couldn't and then thought there was a ton of money in that chest.

\* \* \*

*Defendant*: Yeah, right. It's all you've done is use me and cheat on me.

*DeGroff*: Right. Um, use you for what? 'Cause I haven't made any money or help you steal sixty thousand dollars? And cheat? When? Tell me when I had the opportunity to f****** cheat? You are the one who didn't work most of the summer and hasn't held a single job.

\* \* \*

*Defendant*: I just need to go. . . . I'm always full of anger and everyone at home is in line of fire and it's not fair to all of you. It's just best I, not, be there until I get some sort of help to calm me and help me sleep. It

5

doesn't help that I'm overly stressed over our finances. . . . I wish now that I had a way to go rob those entire safes. Tomorrow I'm taking all that other money to the bank and just deposit it . . . . F*** chasing shit around. I'm trying to sell shit and bring money in but it's not working. I'm a mixed ball of everything and I'm going f****** crazy.

In addition to these incriminating text messages, other circumstantial evidence connected defendant to the theft. Much of the trial testimony was related to defendant's and DeGroff's increased spending habits in August and September 2019. For example, their roommate, Alan Olsen, testified that in August 2019 defendant and DeGroff began going out almost every night, usually not returning until the early morning. Many of those nights, they were at the casino. In August 2019, records showed that defendant played through approximately $57,000[6] in the gaming machines at the Odawa Casino and had a total loss of approximately $4,000. One night in August, Olsen accompanied defendant to the casino and defendant gave him $800 in cash to gamble with. Olsen saw defendant in possession of three or four "stacks" of hundred-dollar bills with a "yellow paper wrap" around them. In addition, defendant bought a $3,600 truck and a $1,490 diamond ring in August, both with cash. These spending habits were juxtaposed with testimony that

---

[6] This amount was tracked through defendant's "players club card," a device that the casino uses to monitor wins and losses or "coin-in and coin-out" of each player. According to Odawa Casino's slot director, this did not mean that defendant had spent $57,000 at the casino; rather, it represented the amount of money that defendant had played through the machine in August 2019. The slot director explained that the number was not necessarily representative of the total amount of money gambled because a person can also put money into a machine without using their players club card. Put simply, the $57,000 figure did not necessarily correspond with the $60,000 stolen from Billings, but it did reflect increased casino spending in August.

6

defendant and DeGroff had only $283 in their joint bank account at the end of July 2019.[7] Moreover, defendant's former employer testified that defendant quit his job in early August, telling the employer that "he ran across some money and some valuables . . . in a locker that he bought online," and so he "had a lot of money" and "didn't need to work for awhile . . . ." And, when law enforcement executed a search warrant at defendant and DeGroff's house in February 2020, the police found several items belonging to Billings, including a wooden wall clock, a knife, cast iron pans, two cameras, leisure bags, screws and bolts, costume jewelry, snow sleds, a spray gun, fishing poles, and snowshoes.

Defendant's defense was that the prosecution failed to prove beyond a reasonable doubt that anyone broke into the safes and stole from Billings, contending that Billings had lied or was confused because of his age and the effect of pain medications. Defendant also presented evidence to show his income stream at the time of the alleged thefts. This was largely through the testimony of his brother, who testified that defendant worked for his construction company. Although he had no documentation to prove it, defendant's brother testified that he paid defendant approximately $25,000 in 2019 and he transferred the money into defendant's checking account.

As previously indicated, the jury convicted defendant of safebreaking, larceny of property with a value of $20,000 or more, receiving or concealing stolen property with a value of $20,000 or more, larceny in a building, and corresponding conspiracy charges. He was sentenced to 10 to 20 years in prison for safebreaking, 9 to 20 years in prison for both

_____

[7] For DeGroff's part, evidence was presented that she made $245 per week and that she played through more than $12,000 in the casino in August with a loss of more than $2,000. In addition, in the "late summer," she made a $1,600 cash donation to a fundraiser.

larceny of property and receiving or concealing stolen property, and 3 to 15 years in prison for larceny from a building, plus a prison term for each conspiracy conviction that matched the sentence for its underlying offense.

Following an unsuccessful motion in the trial court for a new trial, defendant appealed by right. In an opinion authored by Judge MALDONADO and joined by Judge HOOD, the Court of Appeals majority held, in relevant part,[8] "that the warrant authorizing the search of defendant's cell phone violated the particularity requirement because it authorized a general search of the entirety of the phone's contents." *People v Carson*, ___ Mich App ___; ___ NW3d ___ (February 15, 2024) (Docket No. 355925); slip op at 2. The majority further held that the good-faith exception to the exclusionary rule did not apply and that trial counsel was constitutionally ineffective for failing to seek exclusion of the cell phone's contents. *Id*. at ___; slip op at 2. Judge REDFORD authored a dissenting opinion and Judge HOOD authored a concurring opinion.[9] The prosecution sought leave to appeal in this Court. We granted the prosecution's application and directed the parties to address

_____

[8] As noted, the Court of Appeals also held that defendant's convictions of both larceny and receiving or concealing stolen property, and both corresponding conspiracy convictions, violated the prohibition against multiple punishments for the same offense. *Carson*, ___ Mich App at ___, ___ n 5, ___; slip op at 10 & n 5, 18. Because that issue and the issue currently before this Court were sufficient to resolve the appeal, the panel did not address defendant's other arguments. *Id*. at ___; slip op at 2.

[9] In his separate concurrence, Judge (now Justice) HOOD joined the majority opinion in full but wrote separately to highlight his view that the warrant affidavit failed to adequately set forth a nexus between the item to be seized and the suspected criminal conduct. *Carson*, ___ Mich App at ___ (HOOD, J., concurring); slip op at 1, citing *Hughes*, 506 Mich at 527 n 6. This issue is not currently before the Court.

whether the Court of Appeals erred by: (1) holding that the warrant to search the defendant's cell phone violated the Fourth Amendment's particularity requirement, see *People v Hughes*, 506 Mich 512, 538[; 958 NW2d 98] (2020); (2) failing to sever any valid portions of the search warrant from any invalid portions, see *People v Keller*, 479 Mich 467, 479[; 739 NW2d 505] (2007); (3) holding that the good-faith exception to the exclusionary rule did not apply, see *People v Goldston*, 470 Mich 523, 531[; 682 NW2d 479] (2004), discussing *United States v Leon*, 468 US 897, 923[; 104 S Ct 3405, 82 L Ed 2d 677] (1984); and (4) finding that trial counsel deprived the defendant of his right to the effective assistance of counsel by failing to move to suppress the evidence obtained from his cell phone on these grounds, see *Strickland*[, 466 US at 687-688]. [*People v Carson*, ___ Mich ___, ___; 11 NW3d 269, 269 (2024).]

## II. STANDARD OF REVIEW

In a postconviction motion for a new trial, defendant argued that his attorney provided constitutionally ineffective assistance of counsel by not moving to suppress text messages obtained pursuant to a constitutionally deficient search warrant. In order to discern whether counsel performed deficiently, we find it appropriate and necessary to consider the underlying substantive Fourth Amendment issue.[10] Our review of Fourth

---

[10] "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley (After Remand)*, 468 Mich 135, 142; 659 NW2d 611 (2003). Thus, the lack of substantive merit in an argument necessarily defeats a claim that trial counsel performed deficiently by failing to object on a particular basis. But if an underlying substantive issue has merit, an appellate court must assess whether trial counsel's failure to object was nonetheless objectively reasonable given the legal landscape and facts of the case "viewed as of the time of counsel's conduct." *Strickland*, 466 US at 690. Thus, the substantive merit of an argument is necessarily intertwined with and germane to the determination of whether trial counsel's performance was objectively reasonable. We therefore disagree with Justice ZAHRA and Justice BERNSTEIN that our Fourth Amendment holding constitutes obiter dicta or an advisory opinion because the Fourth Amendment issue is germane to our ultimate holding that defendant's counsel did not perform ineffectively. *Detroit v Mich Pub Utilities Comm*, 288 Mich 267, 299-300; 286 NW 368 (1939), quoting *Chase v American Cartage Co, Inc*, 176 Wis 235, 238; 186 NW 598 (1922) (" 'When a court of last resort intentionally takes up, discusses, and decides a question *germane* to, though not necessarily decisive of, the controversy, such decision

9

Amendment principles is de novo. *People v Hammerlund*, 504 Mich 442, 451; 939 NW2d 129 (2019). "Whether a defendant received ineffective assistance of trial counsel is a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We review the trial court's findings of fact for clear error, but questions of constitutional law are reviewed de novo. *Hammerlund*, 504 Mich at 451.

## III. THE FOURTH AMENDMENT PARTICULARITY REQUIREMENT

The Fourth Amendment protects individuals from unreasonable searches and seizures. US Const, Am IV. In general, for a search to be considered reasonable, the police must obtain a search warrant. *Hughes*, 506 Mich at 525. In *Riley v California*, 573 US 373, 403; 134 S Ct 2473; 189 L Ed 2d 430 (2014), the United States Supreme Court held that the warrant requirement applied to the search of a cell phone seized incident to arrest. *Riley* acknowledged the magnitude of the privacy interests at stake, noting that a cell phone can carry "the sum of an individual's private life" and that "[a] cell phone search would typically expose the government to far more than the most exhaustive search of a house[.]" *Id*. at 394, 396 (emphasis omitted). That is, "[m]odern cell phones are not just another technological convenience," *id*. at 403; rather, most "who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate," *id*. at 395.

The issue we confront today is the proper relationship between these realities and the Fourth Amendment's particularity requirement, which mandates that a warrant

---

is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision.' "); see also *People v Kevorkian*, 447 Mich 436, 487 n 65; 527 NW2d 714 (1994) (opinion by M. F. CAVANAGH, C.J., and BRICKLEY and GRIFFIN, JJ.) (same).

"*particularly* describ[e] the place to be searched, and the persons or things to be seized."
US Const, Am IV (emphasis added).[11]  "The manifest purpose of this particularity requirement was to prevent general searches."  *Maryland v Garrison*, 480 US 79, 84; 107 S Ct 1013; 94 L Ed 2d 72 (1987).  "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."  *Id*.  "Whether a search warrant satisfies the particularity requirement depends on the circumstances and the types of items involved."  *People v Brcic*, 342 Mich App 271, 278; 994 NW2d 812 (2022), citing *Steele v United States*, 267 US 498, 503; 45 S Ct 414; 69 L Ed 757 (1925); see also *United States v Galpin*, 720 F3d 436, 446 (CA 2, 2013) ("[A] failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment . . . .") (quotation marks and citation omitted).

---

[11] Our state Constitution, Const 1963, art 1, § 11, also guards against unreasonable searches and seizures.  In fact, as amended by voter initiative in the 2020 general election, Const 1963, art 1, § 11 specifically provides that "[n]o warrant to . . . access electronic data or electronic communications shall issue without describing them . . . ."  However, defendant's claims below rested solely on Fourth Amendment principles.  Therefore, we have no occasion to consider whether the language of Const 1963, art 1, § 11 provides broader protection than the Fourth Amendment in this context.  Compare *People v Lucynski*, 509 Mich 618, 634 n 6; 983 NW2d 827 (2022) (noting that Const 1963, art 1, § 11 is interpreted coextensively with the Fourth Amendment unless there is a compelling reason for a different interpretation), with *People v Bullock*, 440 Mich 15, 30-31; 485 NW2d 866 (1992) (concluding that a textual difference between the Eighth Amendment and Const 1963, art 1, § 16 supported a broader interpretation of our state constitutional provision).

This Court considered the particularity requirement's effects on the scope of a warrant-authorized search of a cell phone in *Hughes*, 506 Mich at 512.[12] In *Hughes*, the police obtained a warrant to search the defendant's cell phone for evidence of a specific crime, drug trafficking. *Id*. at 519. Later, and without obtaining a second search warrant, the police searched the same data for evidence of another unrelated crime, armed robbery. *Id*. at 521. This Court held that the second search violated the Fourth Amendment because "a search of digital data from a cell phone must be reasonably directed at uncovering evidence of the criminal activity alleged in the warrant," and "any search that is not so directed . . . is beyond the scope of the warrant." *Id*. at 538 (quotation marks and citation omitted).

This holding was informed by the "extensive privacy interests in cellular data," *id*., that the Supreme Court recognized in *Riley*, 573 US at 403, as well as by the particularity requirement. This Court acknowledged that a suspect might not store or organize incriminating information in an obvious manner; nonetheless, it "decline[d] to adopt a rule that it is always reasonable for an officer to review the entirety of the digital data seized pursuant to a warrant on the basis of the mere possibility that evidence may conceivably be found anywhere on the device . . . ." *Hughes*, 506 Mich at 541. Such a rule would "nullify the particularity requirement" and "rehabilitate an impermissible general warrant

---

[12] In *Hughes*, 506 Mich at 540, we noted that "the warrant authorized officers to review the entire 600-page report containing the apparent totality of [the] defendant's cell-phone data . . . ." It is unlikely that such a wide-ranging search would pass muster under the parameters we announce today. However, the dispositive issue in *Hughes* was whether the police acted within the scope of the warrant, whereas here the issue concerns the scope of the warrant itself. *Hughes*, 506 Mich at 551 n 26.

12

that would in effect give police officers unbridled discretion to rummage at will among a person's private effects." *Id*. at 542 (quotation marks, citations, and emphasis omitted). It would also be especially problematic in light of the "sheer amount of information contained in cellular data and the highly personal character of much of that information." *Id*., citing *Riley*, 573 US at 394-396.

## A. THE SEARCH WARRANT AT ISSUE

With these principles in mind, we turn to the language of the search warrant at issue in this case. The warrant provided, in relevant part:

**1. The person, place or thing to be searched is described as . . .**

Cellular device belonging to Michael Georgie Carson . . . .

**2. The PROPERTY . . . to be searched for and seized, if found, is specifically described as:**

Any and all records or documents*[13] pertaining to the investigation of Larceny in a Building and Safe Breaking. As used above, the term records or documents includes records or documents which were created, modified or stored in electronic or magnetic form and any data, image, or information that is capable of being read or interpreted by a computer. In order to search for any such items, searching agents may seize and search the following: cellular devices; Any physical keys, encryption devices and similar physical items that are necessary to gain access to the cellular device to be searched or are necessary to gain access to the programs, data, applications and information contained on the cellular device(s) to be searched; Any passwords, password files, test keys, encryption codes or other computer codes necessary to access the cellular devices, applications and software to be searched or to convert any data, file or information on the cellular device into a readable form; This shall include thumb print and facial recognition and or digital PIN passwords, electronically stored communications or messages, including any of the items to be found in electronic mail ("e-mail"). Any and all data including text messages, text/picture messages,

---

[13] This asterisk has no counterpart to which it refers. To avoid confusion, we will omit this asterisk when quoting this part of the warrant.

pictures and videos, address book, any data on the SIM card if applicable, and all records or documents which were created, modified, or stored in electronic or magnetic form and any data, image, or information that is capable of being read or interpreted by a cellular phone or a computer.

## B. THE COURT OF APPEALS' DECISION

The Court of Appeals majority held that the search warrant in this case was an unconstitutional general warrant "that gave the police license to search *everything* on defendant's cell phone in the hopes of finding anything, but nothing in particular, that could help with the investigation." *Carson*, ___ Mich App at ___; slip op at 12. The warrant did not place any limitations on the permissible scope of the search. "The only hint of specificity" was the warrant's opening reference to " 'the investigation of Larceny in a Building and Safe Breaking . . . .' " *Id*. at ___; slip op at 12. However, the majority reasoned that this "small guardrail was negated by the ensuing instruction to search for such items by searching and seizing the entirety of the phone's contents." *Id*. at ___; slip op at 12.

The panel majority acknowledged that there existed sufficient probable cause to believe that defendant and DeGroff broke into and stole from Billings's safe and to believe that the two communicated by cell phone. *Id*. at ___; slip op at 12. Therefore, the majority reasoned that it would have been appropriate for the police to search the phone for correspondence between defendant and DeGroff, for example, SMS (Short Message Service) messages or messages sent through other applications. However, the warrant allowed the police to search everything and even mentioned photographs and videos, which the majority found "particularly troubling." *Id*. at ___; slip op at 12. In addition, the panel majority expressed unease about the police having free rein to peruse applications that

14

might include sensitive health-related records and information. *Id*. at ___; slip op at 12. With these concerns in mind, the majority concluded that the search warrant authorized the type of " 'wide-ranging exploratory search[] the framers intended to prohibit.' " *Id*. at ___; slip op at 13, quoting *Hughes*, 506 Mich at 539. In fact, the panel majority reasoned, many people might view an unfettered search of their digital data "as more deeply violative of their privacy than the sort of general search of a home that the framers originally intended to avoid." *Carson*, ___ Mich App at ___; slip op at 13. Accordingly, the majority held that a cell-phone search warrant "must be carefully limited in scope." *Id*. at ___; slip op at 13. And while the warrant need not tell the police "precisely what they are looking for or where to find it, . . . there must be guardrails in place." *Id*. at ___; slip op at 13.[14]

Judge REDFORD dissented. He concluded that, in light of the introductory sentence of the warrant, which provided for the search of "any and all records or documents pertaining to the investigation of Larceny in a Building and Safe Breaking," the warrant at issue was not a general warrant. *Id*. at ___ (REDFORD, J., dissenting); slip op at 10. Judge REDFORD reasoned that this opening clause "provided context for all that followed" and "necessarily plac[ed] limitations and parameters on the nature and scope of the information and data that could be sought or retrieved by law enforcement . . . ." *Id*. at ___; slip op at 10. The search warrant, therefore, "supplied context connecting the particularized

---

[14] The majority recognized that there was no binding authority "discussing the analysis of whether the language of a warrant authorizing a search of cell phone data comports with the particularity requirement." *Id*. at ___; slip op at 13. However, the panel cited and briefly discussed several persuasive authorities, including *State v Smith*, 344 Conn 229; 278 A3d 481 (2022); *State v Bock*, 310 Or App 329; 485 P3d 931 (2021); *People v Coke*, 461 P3d 508; 2020 CO 28 (Colo, 2020); *Richardson v State*, 481 Md 423; 282 A3d 98 (2022); and *State v Wilson*, 315 Ga 613; 884 SE2d 298 (2023).

15

description of the venue to be searched, i.e., the cell phone, and the data and information to be seized with the larcenous, safe-breaking criminal conduct that was suspected." *Id*. at ___; slip op at 10. Judge REDFORD disagreed with the majority that this opening language was an insufficient "guardrail." *Id*. at ___; slip op at 10. Instead, he stated that "the sentence plainly set forth the boundaries of the entire warrant." *Id*. at ___; slip op at 10. In Judge REDFORD's opinion, the search warrant was consistent with this Court's instruction in *Hughes* because it limited the extent of the search to data and information related to larceny and safebreaking and did not allow a search for any and all criminal activity. *Id*. at ___; slip op at 11.

## C. DISCUSSION

Cell phones in the modern world hold "the privacies of life." *Riley*, 573 US at 403 (quotation marks and citation omitted). Therefore, like the protections that extend to the home, "Fourth Amendment principles apply with equal force to the digital contents of a cell phone." *Hughes*, 506 Mich at 527. Accordingly, in the context of a cell-phone search, we must jealously guard the requirements of the Fourth Amendment, including the particularity requirement. See, e.g., *Galpin*, 720 F3d at 447 (finding it appropriate to view the particularity requirement in the context of digital searches with a "heightened sensitivity"); *United States v Russian*, 848 F3d 1239, 1245 (CA 10, 2017) (recognizing the importance of the particularity requirement for searches of digital information because such searches are "especially vulnerable to a worrisome exploratory rummaging by the government") (quotation marks and citation omitted); *Commonwealth v Dorelas*, 473 Mass 496, 502; 43 NE3d 306 (2016) ("[G]iven the properties that render an iPhone distinct from

16

the closed containers regularly seen in the physical world, a search of its many files must be done with special care and satisfy a more narrow and demanding standard."). And, like the Court of Appeals majority, we also conclude that the warrant at issue was insufficiently particular and that, therefore, the unrestrained search of defendant's cell phone violated the Fourth Amendment.

We first consider the opening clause of the search warrant and whether it acted as an insufficient "small guardrail," *Carson*, ___ Mich App at ___ (opinion of the Court); slip op at 12, or a firmly set boundary, see *id.* at ___ (REDFORD, J., dissenting); slip op at 10. Our focus is on "practical accuracy, as opposed to technical precision," when reviewing the language of a search warrant. *United States v Tompkins*, 118 F4th 280, 287-288 (CA 2, 2024); see also *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992) ("Search warrants . . . are to be read in a common-sense and realistic manner.") (quotation marks and citation omitted). That said, even viewed through the lens of common sense, the search warrant at issue is a hard-to-decipher amalgamation of seemingly unrelated boilerplate language in one long paragraph.[15] The first sentence instructs that the property to be searched for and seized is "[a]ny and all records or documents pertaining to the investigation of Larceny in a Building and Safe Breaking." The second sentence purports

---

[15] See *United States v Otero*, 563 F3d 1127, 1133 (CA 10, 2009):

> Differences such as subject headings and paragraph formation might seem insignificant, but if we are to follow our command of reading each part of the warrant in context, these structural indicators are useful tools. Affording the government a practical rather than a technical reading does not require us to indulge every possible interpretation.

See also *United States v Winn*, 79 F Supp 3d 904, 919 (SD Ill, 2015) ("Templates are, of course, fine to use as a starting point. But they must be tailored to the facts of each case.").

17

to describe what the term "records or documents" entails. The third sentence provides that searching agents can seize physical items (cellular devices, physical keys, encryption devices), digital items (passwords, test keys, encryption codes, computer codes), and physical features (thumbprint and facial recognition) as necessary to access the cell phone. The fourth sentence broadly provides that an executing officer can search "[a]ny and all data" including text messages, pictures, videos, "address book," and "all records or documents."

Broken down this way, it is difficult to conclude that the first sentence, which arguably has some limiting language, provides any meaningful affirmative limitation on the remaining sentences—most importantly, the fourth sentence, which allows a search for "any and all data." We cannot conclude that a practical reading of the search warrant at issue would sufficiently inform an executing officer how to reasonably conduct a limited and constitutionally particular search. The lack of instruction on the scope, breadth, or focus of the search shifts the particularity requirement from the warrant, where it belongs, to the executing officer's discretion. *Marron v United States*, 275 US 192, 196; 48 S Ct 74; 72 L Ed 231 (1927) (holding that the particularity requirement ensures that "nothing is left to the discretion of the officer executing the warrant"); but see *Galpin*, 720 F3d at 446 (noting that the "no discretion" standard is not generally applied literally, as courts often tolerate "some ambiguity"). Or, as we put it in *Hughes*, the warrant does not inform the executing officers how to "reasonably direct[] [their search] at uncovering evidence related to the criminal activity identified in the warrant . . . ." *Hughes*, 506 Mich at 540.

The prosecution argues that a warrant that specifies the items to be seized by their relation to designated crimes provides sufficient guidance to the executing officers, see

18

*Tompkins*, 118 F4th at 287.  But even assuming that the entirety of the search warrant was limited by the opening language to authorize the search and seizure of "[a]ny and all records or documents pertaining to the investigation of Larceny in a Building and Safe Breaking," we disagree that the limitation is sufficient to satisfy the particularity requirement.  Specifying the crime under investigation is necessary, but not usually sufficient to ensure adequate particularity in the context of a cell-phone search warrant.  "[A] caveat that the search is limited to evidence of a particular crime . . . gives little or no clarity to an officer as to where to look, for what to look, or how to look for it." *State v Wilson*, 315 Ga 613, 619; 884 SE2d 298 (2023) (Peterson, J., concurring).  The authorization to search every nook and cranny of the cell-phone data for "any and all records or documents" and "any and all data" related to safebreaking and larceny provides no meaningful constraint in this case.  Although such a wide-ranging search might uncover incriminating evidence, such exploratory rummaging is not "reasonably directed at obtaining evidence" of safebreaking or larceny.  *Hughes*, 506 Mich at 516.[16]

If this warrant was insufficiently particular, the question that naturally arises is what *would* satisfy the particularity requirement.  Like the Court of Appeals majority in this case, we cannot and do not create a per se rule of specificity that applies to all cell-phone searches.  We recognize that, in many cases, an exact description of what law enforcement

---

[16] Finally, we note that the warrant broadly allowed a search for records and documents generally "pertaining to the investigation of Larceny in a Building and Safe Breaking," not to any specific evidence that law enforcement believed it might uncover on the basis of probable cause.  The lack of adequate particularity as to what officers were searching for further supports the Court of Appeals majority's conclusion that officers were searching defendant's cell phone "in the hopes of finding anything, but nothing in particular . . . ." *Carson*, ___ Mich App at ___ (opinion of the Court); slip op at 12.

19

should be searching for and where they should search for it is not necessarily feasible. See *Hughes*, 506 Mich at 540-541 (noting that "criminal suspect[s] will not always store or organize incriminating information on [their] digital devices in the most obvious way or in a manner that facilitates the location of that information"). However, a search warrant should be as particular as the circumstances presented permit and consistent with the nature of the item to be searched. See *United States v Leary*, 846 F2d 592, 600 (CA 10, 1988) ("[T]he fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow . . . .").[17]

While there is little Michigan caselaw outlining the specifics of the particularity requirement, other states' high courts have considered the issue, and their decisions provide guidance. Many cases, for example, emphasize the importance of temporal limitations on the data to be searched. See *Commonwealth v Snow*, 486 Mass 582, 593; 160 NE3d 277 (2021) ("The magnitude of the privacy invasion of a cell phone search utterly lacking in temporal limits cannot be overstated.").[18] This emphasis is unsurprising in the context of

---

[17] Justice ZAHRA cites a host of caselaw from the federal circuits, which he finds persuasive. We find it unnecessary to catalog specific disagreement with each of these nonbinding cases. That said, we note that at least one case predates *Riley* and the proliferation of smartphone technology, so the value of its holdings may be overstated. See, e.g., *United States v Stabile*, 633 F3d 219 (CA 3, 2011). And many of the post-*Riley* decisions express similar concerns about the quantity of data contained in cell phones and state that warrants to search them must be carefully limited in scope. See, e.g., *United States v Palms*, 21 F4th 689, 698 (CA 10, 2021) ("Because computers can contain enormous amounts of information and relevant evidence can be stored in any location, the Fourth Amendment requires warrants for computer searches to 'affirmatively limit the search to evidence of specific . . . crimes or specific types of material.' ") (citation omitted; ellipsis in original).

[18] See *State v Short*, 310 Neb 81, 139; 964 NW2d 272 (2021) ("The most important constraint in preventing unconstitutional exploratory rummaging is that the warrant limit

---

20

cell phones and digital data. *Riley*, 573 US at 394 (noting the privacy consequences of cell-phone searches considering that "the data on a phone can date back to the purchase of the phone, or even earlier"). And such temporal information will generally be easy to include in the search warrant. That is, even if the drafter of a search warrant cannot specifically describe the evidence sought, generally an investigating officer will be able to identify a relevant time frame for the criminal activity. Put simply, when information concerning the relevant time frame of the criminal activity exists, this time limitation should be included in the search warrant to ensure adequate particularity.

Another common particularity limit focuses on the categories of data to be searched. Some courts have concluded that warrants that, expressly or effectively, allow the police to search *all* data on a cell phone violate the particularity requirement. See, e.g., *State v Henderson*, 289 Neb 271, 290; 854 NW2d 616 (2014) (holding that a warrant authorizing a search for "[a]ny and all information" and listing various categories of data did not comply with the particularity requirement); *Terreros v State*, 312 A3d 651, 667 (Del, 2024) (holding that a warrant that "in effect" allowed the police to search "any and all data"

---

the search to evidence of a specific crime, ordinarily within a specific time period, rather than allowing a fishing expedition for all criminal activity."); *Richardson*, 481 Md at 458-459 ("Perhaps the most common limitation that issuing judges should consider including in a warrant to satisfy the particularity requirement is a temporal restriction."); see also *Terreros v State*, 312 A3d 651, 668 (Del, 2024); *State v Smith*, 344 Conn 229, 252; 278 A3d 481 (2022); *People v Coke*, 461 P3d 508, 516; 2020 CO 28 (Colo, 2020) (all concluding that warrants lacking time restrictions violated the particularity requirement); *State v Mansor*, 363 Or 185, 188; 421 P3d 323 (2018) (reaching a similar conclusion under the state constitution).

amounted to a general warrant).[19]  The need for specificity about the types of data expected to be encountered and searched must be weighed against the fact that law enforcement often will not be certain what evidence exists and where it will be located.  This does not, however, free them from the obligation to provide the most specific description possible and to support a request to search each category of data mentioned in a warrant affidavit.  Nor does it permit magistrates to approve boundless searches of electronic data when the information available provides a basis for a more reasonably tailored search.  See *Burns v United States*, 235 A3d 758, 777 (DC, 2020), quoting *United States v Bass*, 785 F3d 1043, 1050 (CA 6, 2015) (" 'The proper metric of sufficient specificity is whether it was reasonable to provide a more specific description of the items at that juncture of the investigation.' "); *State v Goynes*, 303 Neb 129, 142; 927 NW2d 346 (2019) ("A search warrant may be sufficiently particular even though it describes the items to be seized in broad or generic terms if the description is as particular as the supporting evidence will

---

[19] Oftentimes, questions about the types of data to be searched are bound up in the question of the "nexus . . . between the item to be seized and criminal behavior."  *Warden, Md Penitentiary v Hayden*, 387 US 294, 307; 87 S Ct 1642; 18 L Ed 2d 782 (1967).  Thus, courts have invalidated warrants that allow officers to search and seize information beyond what is otherwise justified by a showing of probable case in the affidavit.  See, e.g., *State v Castagnola*, 145 Ohio St 3d 1, 20; 2015-Ohio-1565; 46 NE3d 638 (2015) ("[T]he broad language of this search warrant clearly included items that were not subject to seizure.  The search warrant permitted [law enforcement] to examine every record or document on [the defendant's] computer in order to find any evidence of the alleged crimes."); *Burns v United States*, 235 A3d 758, 774 (DC, 2020) ("The facts set forth in the warrants' supporting affidavits established probable cause to believe the phones contained [GPS and text-message evidence of a murder].  But beyond those discrete items, the affidavits stated no facts that even arguably provided a reason to believe that any other information or data on the phones had any nexus to the investigation of [the victim's] death.").

allow, but the broader the scope of a warrant, the stronger the evidentiary showing must be to establish probable cause.").[20]

In sum, our decision today builds on our decision in *Hughes*. The same concerns that led us to place limits on the conduct of a search in *Hughes* underlie the standards we impose on warrants. Requiring additional specificity in the text of a warrant ensures that executing officers "reasonably direct" their search "at uncovering evidence related to the criminal activity identified in the warrant . . . ." *Hughes*, 506 Mich at 540.[21] Indeed, without clear guidance in the warrant about the nature and location of the evidence sought, officers cannot know where to "reasonably direct" their efforts. Ultimately, the degree of particularity required to adequately direct a search depends on the crime being investigated and the items sought. *Brcic*, 342 Mich App at 278.[22]

---

[20] Applying such considerations to the facts of this case, the warrant here might have contained adequate particularity if it had directed law enforcement to search for text messages or communications (categorical limitation) between defendant and DeGroff during August and September 2019 (temporal limitation).

[21] Justice ZAHRA contends that we should focus on the search method and whether the search was conducted reasonably. While it is important that officers reasonably direct their search efforts within the bounds set by the warrant, they must be armed with a sufficiently particularized warrant in order to do so. These two requirements cannot be separated as our colleague suggests. Cf. *Snow*, 486 Mass at 590 (stating that the particularity requirement serves two purposes: "(1) to protect individuals from general searches and (2) to provide the Commonwealth the opportunity to demonstrate, to a reviewing court, that the scope of the officers' authority to search was properly limited") (quotation marks and citations omitted).

[22] We reject the prosecution's attempt to analogize the search here to searches in cases like *Steele*, 267 US at 505, in which the United States Supreme Court in a Prohibition-era case held that the search of a "whole building" for a case of whiskey was constitutional. More recently, the Supreme Court has explicitly acknowledged that physical searches and digital searches are not readily comparable. See *Riley*, 573 US at 393 (quipping that the argument that a search of data on a phone and a search of a physical item were materially

We conclude that the search warrant in this case was insufficiently particular. It allowed officers to comb through every conceivable type of information on the cell phone limited only, at best, to evidence "pertaining to the investigation of Larceny in a Building and Safe Breaking." In our modern age, when cell phones carry a virtually unlimited amount of private information, such wide-ranging exploratory rummaging is constitutionally intolerable and clearly violates the Fourth Amendment.[23]

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

As explained, the Fourth Amendment issue comes through defendant's claim that his attorney should have raised the issue in a motion to suppress. "[T]o obtain a new trial because of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome could have been different." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (quotation marks and citation omitted).

As to the performance prong of a claim alleging ineffective assistance of counsel, courts "must judge the reasonableness of counsel's challenged conduct on the facts of the

---

indistinguishable "is like saying a ride on horseback is materially indistinguishable from a flight to the moon"). "Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house[.]" *Id*. at 396.

[23] Notably, our decision today is based on the warrant's lack of particularity regarding the authorization to *search* defendant's cell-phone data for incriminating evidence; we do not address the *seizure* of a broader swath of data, given the nature of the property at issue and the technology used to identify the data that may be permissibly searched. See *Hughes*, 506 Mich at 529-530 (highlighting the important distinctions between a search of cell-phone data and the seizure of that data).

particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 US at 690. In other words, "[a] reviewing court must not evaluate counsel's decisions with the benefit of hindsight." *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). While "defense counsel's performance cannot be deemed deficient for failing to advance a novel legal argument," *People v Reed*, 453 Mich 685, 695; 556 NW2d 858 (1996), if "there was existing precedent that would have strongly supported a motion to suppress, trial counsel's failure to raise [a] Fourth Amendment challenge cannot be excused for not foreseeing a change in the law," *People v Hughes (On Remand)*, 339 Mich App 99, 109; 981 NW2d 182 (2021).

As to the prejudice prong of a claim alleging ineffective assistance of counsel, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Yeager*, 511 Mich at 488 (quotation marks and citations omitted). "[W]here there is relatively little evidence to support a guilty verdict to begin with . . . , the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt." *People v Trakhtenberg*, 493 Mich 38, 56; 826 NW2d 136 (2012) (quotation marks and citation omitted).

### A. ADDITIONAL FACTUAL BACKGROUND

Defendant's attorney filed a pretrial motion to suppress in June 2020. The motion argued that defendant's Fourth Amendment rights were violated not when defendant's cell phone was searched, but rather when it was *seized* without a warrant at the time defendant was arrested. The trial court held a hearing on the motion on July 7, 2020. Thereafter, the

trial court denied the motion in a written order and opinion, concluding that it was a valid seizure incident to arrest.[24]

In his postconviction motion for a new trial, defendant argued that it was constitutionally ineffective for his attorney not to have sought suppression of the contents of the cell phone on the basis of the search warrant. The trial court held a *Ginther*[25] hearing, at which defendant's trial counsel was the only witness. Counsel explained that he thought the affidavit in support of the search warrant was "fine," which was why he filed the motion to suppress based on the cell phone's seizure. When reviewing the search warrant, counsel thought it provided "a basis to look for that cell phone," and "after that, the content of the cell phone is basically pro forma." After further questioning from the trial court, counsel noted that "[l]ooking back" he believed it was an error not to file a motion to suppress the contents of the cell phone, but he expressed hesitation about whether such a motion would have been successful.

Following the hearing, the trial court issued an opinion and order denying defendant's motion for a new trial. As to performance, the trial court concluded that counsel should have filed a motion to suppress the contents of the cell phone "if only to preserve the appeal." The trial court concluded that the text messages were "integral to the Prosecutor's case" and that there was a reasonable probability of a different outcome if they had been suppressed. However, the trial court concluded that the good-faith exception to the exclusionary rule would have applied; therefore, the court believed that, even if

---

[24] This issue is not before the Court.

[25] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

counsel had filed a motion to suppress and the court had invalidated the warrant, the text messages would not have been suppressed. Accordingly, the trial court concluded that such a motion would not have produced a different outcome, and defendant thus did not receive constitutionally ineffective assistance of counsel.

## B. THE COURT OF APPEALS' DECISION

The panel majority agreed with the trial court that trial counsel's failure to seek exclusion of the cell phone's contents constituted objectively unreasonable performance and found that there was a reasonable probability of a different outcome of defendant's trial had the evidence obtained from the cell phone been excluded from trial. *Carson*, ___ Mich App at ___; slip op at 7.

Under the first prong, the majority concluded that trial counsel did not have a strategic reason for failing to seek exclusion of the cell phone's contents as violative of the particularity requirement. The majority noted that trial counsel's testimony suggested a mistaken belief that if the police had a lawful basis to *seize* a phone, they also had the legal right to search the entirety of its contents. Therefore, the failure to seek exclusion was based on a misunderstanding of the law, not valid trial strategy. *Id*. at ___; slip op at 17.

Turning to the prejudice prong, the majority concluded that it was "not difficult . . . to conclude that there is a reasonable probability that the trial would have had a different outcome had the contents of the cell phone not been admitted." *Id*. at ___; slip op at 17. It acknowledged the "persuasive circumstantial evidence," summarizing:

> The properly admitted evidence established that defendant did not have a significant source of income when he began selling property for Billings and that he and DeGroff only had $283.13 in their joint bank account at the end of July 2019. However, in September 2019, not long before Billings

27

discovered that the contents of the safes were missing, defendant deposited nearly $10,000 into the bank account he shared with DeGroff, and in August 2019 defendant put $57,000 into the gaming machines at the Odawa Casino. Also, defendant quit his job and told his boss that he no longer needed the work because he had found valuables in a locker he purchased online. Moreover, Billings testified that only defendant and DeGroff could have accessed the safes during the period when they were emptied. This evidence was sufficient to prove beyond a reasonable doubt that defendant and DeGroff conspired to steal the contents of Billings's safe. [*Id*. at ___; slip op at 17-18.]

However, "[w]hile the properly admitted evidence was persuasive," the improperly admitted text messages were "essentially definitive," and their value could not "be overstated." *Id*. at ___; slip op at 18. While a guilty verdict would have been "unsurprising" without the text messages, with the text messages a not-guilty verdict would have been "shocking." *Id*. at ___; slip op at 18. Therefore, the majority concluded that there was a reasonable probability that the outcome of the proceedings would have been different if not for defense counsel's failure to file a motion to suppress.

Judge REDFORD did not discuss trial counsel's performance but concluded that defendant was unable to show prejudice in light of the overwhelming untainted evidence. *Id*. at ___ (REDFORD, J., dissenting); slip op at 14. He reasoned that "[w]hile the text messages undoubtedly strengthened the prosecution's case, they simply made an overwhelming case of guilt an insurmountable case of guilt," and he concluded that there was not a reasonable probability "that the jury would have acquitted defendant absent the text messages." *Id*. at ___; slip op at 14.

28

## C. DISCUSSION

We are not satisfied that defendant has shouldered his burden to demonstrate ineffective assistance of counsel in this case. See *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).

As indicated by our previous analysis, a motion to suppress based on the lack of particularity in the search warrant at issue would not have been substantively meritless. *People v Riley (After Remand)*, 468 Mich 135, 142; 659 NW2d 611 (2003). However, as we must, we consider counsel's performance in light of the facts and circumstances that existed at the time of counsel's conduct. *Strickland*, 466 US at 690. Unlike the Court of Appeals majority, we believe that defendant has not shown that counsel's performance was constitutionally deficient. *Id*. While we are not prepared to call the Fourth Amendment particularity argument in this case "novel," *Reed*, 449 Mich at 695, we also recognize that the application of Fourth Amendment principles in the cell-phone and digital-data sphere is an area of the law that continues to rapidly evolve. *Riley*, 573 US at 403, which was decided several years before this case arose, recognizes the important privacy implications at stake when a cell phone is searched, but its holding is that the police must obtain a search warrant before searching a cell phone seized incident to arrest. It does not speak to particularity. And *Hughes*, 506 Mich at 512—the case we build on today and in which this Court first discussed particularity in the context of a cell-phone search—was not decided until more than six months after counsel filed his unsuccessful motion to suppress. Additionally, many of our sister state courts—whose opinions we rely on today—did not take up the question of particularity in this context until after 2020. See, e.g., *Short*, 310 Neb 81 (2021); *Richardson*, 481 Md 423 (2022); *Wilson*, 315 Ga 613 (2023).

29

While hindsight, our *Hughes* decision, and five additional years of technological advances and court decisions may now render the lack-of-particularity argument an obvious basis for a motion to suppress, the record supports that counsel's decision to file a motion to suppress on a different basis was not based on a misunderstanding of the law as it existed at the time and may be fairly characterized as an exercise of reasonable professional judgment under the facts and circumstances that existed when the decision was made. *Strickland*, 466 US at 689. Therefore, defendant's claim of ineffective assistance of counsel fails.[26]

---

[26] Because defendant must demonstrate both objectively unreasonable performance and prejudice, and we conclude that counsel's performance was objectively reasonable under the circumstances, we need not consider prejudice. Were we to examine prejudice, however, we would find it to be an exceedingly close case. The untainted evidence in this case was persuasive. Defendant and DeGroff had less than $300 in their bank account at the end of July but, after being provided near-exclusive access to Billings's home, their spending habits significantly increased. This was despite testimony that defendant quit his job at the end of July and DeGroff made only $245 per week. Defendant's roommate saw defendant in possession of stacks of hundred-dollar bills that matched the description of the money stolen from Billings's safe. There was also the damaging testimony that defendant had quit his job, a decision he allegedly explained by saying that he "ran across some money and some valuables . . . in a locker that he bought online." That said, there was also evidence that could have provided an alternative explanation for the increased spending. For example, testimony indicated that defendant had won a $12,500 jackpot from the casino in August and that he had sold two vehicles in September. Defendant's brother also testified that defendant worked for his construction company and was paid in cash. A close reading of the testimony of the casino's slot director, as discussed in note 6 of this opinion, suggests that the money that defendant spent at the casino did not directly "correspond" to the sums stolen. Ultimately, however, any possible reasonable doubt raised by these alternative income streams was dashed with the introduction of the text messages that were "essentially definitive" as to defendant's guilt. *Carson*, ___ Mich App ___; slip op at 18. Although we decline to make a determination on prejudice, this is a close question on which reasonable minds could differ, as demonstrated by the differing opinions of the trial court, the majority and dissenting opinions in the Court of Appeals, and the opposing conclusions reached by Justice ZAHRA, Justice BERNSTEIN, and Justice BOLDEN.

## V. CONCLUSION

We agree with the Court of Appeals that the search warrant in this case violated the particularity requirement of the Fourth Amendment. However, this substantive claim must be considered through the lens of counsel's performance, and we conclude that defendant has not demonstrated that it was objectively unreasonable for defendant's attorney not to have filed a motion to suppress on this basis.[27] We, therefore, reverse Part II(B)(3) of the judgment of the Court of Appeals because defendant is not entitled to reversal of his convictions on this specific claim of ineffective assistance of counsel. However, because the Court of Appeals did not address additional arguments that defendant made in his appeal of right, we remand this case to the Court of Appeals for consideration of those issues.

We do not retain jurisdiction.

> Megan K. Cavanagh
> Elizabeth M. Welch
> Kimberly A. Thomas

---

[27] Although the parties were directed to address the good-faith exception to the exclusionary rule and the severance doctrine, because we conclude that counsel's performance was not objectively unreasonable in this respect and that defendant is not entitled to reversal of his convictions on the basis of this claim of ineffective assistance of counsel, we find it unnecessary to address these issues.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                           No. 166923

MICHAEL GEORGIE CARSON,

      Defendant-Appellee.

_____

ZAHRA, J. (*concurring in the result only*).

We are asked to decide whether the Court of Appeals properly granted relief to defendant based on a claim of ineffective assistance of counsel. Defendant contends that his trial counsel performed deficiently by failing to object to the admission of evidence obtained through a warrant authorizing the police to search defendant's cell phone. In defendant's view, the search warrant did not satisfy the Fourth Amendment's particularity requirement. I conclude that defendant fails to show ineffective assistance of counsel because he has not shown prejudice from the alleged unprofessional error by trial counsel. Therefore, I concur in the decision to partially reverse the Court of Appeals' judgment and remand this matter to the Court of Appeals for consideration of defendant's remaining arguments.

I write separately to express my disagreement with the lead opinion on two points. First, the Court overreaches by addressing the Fourth Amendment particularity issue. That issue was raised only indirectly through defendant's ineffective-assistance argument. Generally, the Court should not address legal questions that do not bear on the resolution

of the appeal before it. And this Court has long stated that it will not reach constitutional issues that are unnecessary to our decision. At best, the particularity analysis of the lead opinion constitutes improvident dicta. At worst, it is an unconstitutional advisory opinion, which follows an unfortunate and misguided trend of this Court.[1]

Second, having reached the particularity issue, the lead opinion erroneously concludes that the warrant was insufficiently particular. The weight of authority shows that the warrant satisfied the Fourth Amendment's particularity requirement, as the warrant cabined the scope of the cell-phone search to evidence of specific offenses. Given this limitation, the warrant was facially valid, and the proper inquiry would be whether law enforcement "reasonably directed" their efforts toward uncovering evidence of the crimes specified in the warrant. Although I concur in the decision to partially reverse the judgment of the Court of Appeals and remand to that Court for further proceedings, I cannot join the lead opinion because it both overreaches and engages in flawed legal analysis.

## I. BACKGROUND

Defendant was convicted of multiple crimes after he, along with his girlfriend, Brandie DeGroff, stole a significant amount of property and cash from their neighbor, Don Billings. After the initial police investigation pointed to defendant and DeGroff as the prime suspects, law enforcement arrested defendant. At the same time, they seized defendant's cell phone. The police later obtained a warrant to search the phone. The warrant authorized the police to search the cell phone for the following:

---

[1] See *People v Warner*, 514 Mich 41, 72-78; ___ NW3d ___ (2024) (ZAHRA, J., dissenting in part).

Any and all records or documents pertaining to the investigation of Larceny in a Building and Safe Breaking. As used above, the term records or documents includes records or documents which were created, modified or stored in electronic or magnetic form and any data, image, or information that is capable of being read or interpreted by a computer. In order to search for any such items, searching agents may seize and search the following: cellular devices; [a]ny physical keys, encryption devices and similar physical items that are necessary to gain access to the cellular device to be searched or are necessary to gain access to the programs, data, applications and information contained on the cellular device(s) to be searched; [a]ny passwords, password files, test keys, encryption codes or other computer codes necessary to access the cellular devices, applications and software to be searched or to convert any data, file or information on the cellular device into a readable form; [t]his shall include thumb print and facial recognition and or digital PIN passwords, electronically stored communications or messages, including any of the items to be found in electronic mail ("e-mail"). Any and all data including text messages, text/picture messages, pictures and videos, address book, any data on the SIM card if applicable, and all records or documents which were created, modified, or stored in electronic or magnetic form and any data, image, or information that is capable of being read or interpreted by a cellular phone or a computer. [Asterisk omitted.]

According to testimony at defendant's trial, the phone was sent to a computer crime unit in Traverse City, where a forensic analysis was conducted. The forensic analysis isolated and flagged items for the investigating officers to review. One of the flagged items was a series of incriminating text messages between defendant and DeGroff in which the two discussed going through the contents of Billings's home safe and stealing $60,000 from him. Unrelated to the search of defendant's phone, the investigation also uncovered significant circumstantial evidence that pointed to defendant and DeGroff as the culprits.

The prosecution charged defendant with safebreaking,[2] larceny of property with a value of $20,000 or more,[3] receiving or concealing stolen property with a value of $20,000 or more,[4] larceny from a building,[5] and conspiracy to commit each of those offenses.[6] Before trial, defendant moved to suppress the evidence obtained from his cell phone on the ground that the police improperly seized the phone when executing the warrant for defendant's arrest. The trial court denied the motion. Defendant did not move to suppress the evidence obtained from his cell phone on the ground that the search warrant was invalid.

At the end of defendant's trial, the jury convicted him as charged. Defendant moved for a new trial on several grounds, including a claim that his trial counsel had provided constitutionally deficient performance by failing to move for suppression of the evidence obtained from the cell phone because of a lack of particularity in the search warrant. The trial court, with a different trial judge presiding, conducted a hearing on defendant's motion for a new trial but later entered an opinion and order denying his motion. Defendant appealed by right.

In a published opinion, a divided Court of Appeals panel agreed with defendant that he had received ineffective assistance of trial counsel.[7] The Court of Appeals majority

---

[2] MCL 750.531.

[3] MCL 750.356(2)(a).

[4] MCL 750.535(2)(a).

[5] MCL 750.360.

[6] MCL 750.157a.

[7] *People v Carson*, ___ Mich App ___; ___ NW3d ___ (February 15, 2024) (Docket No. 355925); slip op at 5. The Court of Appeals also held that it violated double-jeopardy protections for a person to "be convicted of both larceny and receiving or concealing stolen

4

held that the search warrant for defendant's phone was facially invalid because it failed the Fourth Amendment's particularity requirement.[8] The Court of Appeals majority also held that the good-faith exception to the exclusionary rule did not apply to the evidence from defendant's cell phone.[9] Finally, the Court of Appeals majority concluded that there was a reasonable probability that the outcome of the trial would have been different but for trial defense counsel's deficient performance.[10] Accordingly, the Court of Appeals overturned defendant's convictions and remanded the case to the trial court.[11]

This Court granted the prosecution's application for leave to appeal[12] and heard oral argument on April 10, 2025.

## II. STANDARD OF REVIEW

When considering a claim of ineffective assistance of counsel, this Court reviews the trial court's findings of fact for clear error and reviews questions of constitutional law de novo.[13]

---

property as a result of the same criminal act." *Id*. at ___; slip op at 10. Judge REDFORD dissented regarding both ineffective assistance of counsel and double jeopardy; he would have affirmed entirely. *Id*. at ___ (REDFORD, J., dissenting); slip op at 14. I agree with the lead opinion's decision not to address the double-jeopardy issue because the prosecution did not raise it in this Court.

[8] *Id*. at ___; slip op at 11-14 (opinion of the Court).

[9] *Id*. at ___; slip op at 14-16.

[10] *Id*. at ___; slip op at 17-18.

[11] *Id*. at ___; slip op at 18.

[12] *People v Carson*, ___ Mich ___; 11 NW3d 269 (2024).

[13] *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

5

### III. ANALYSIS

I conclude that defendant's ineffective-assistance claim fails because he cannot show prejudice from the alleged error by his counsel. The lead opinion does not address prejudice and instead holds that defendant cannot prevail on his ineffective-assistance claim because his trial counsel's failure to challenge the particularity of the search warrant did not amount to objectively unreasonable representation.[14] Because this conclusion disposes of the appeal, I am perplexed by the decision to address the merits of the particularity argument that defendant's trial counsel was supposedly not ineffective for failing to make. If, as the lead opinion concludes, it is dispositive that counsel was not required to make a particularity argument, it is self-evident that the merits of that argument are irrelevant. To compound this error, the lead opinion answers the constitutional question incorrectly. The weight of persuasive authority leads to the conclusion that the search warrant in this case was sufficiently particularized because it constrained law enforcement to search for evidence of specific crimes.

### A. DEFENDANT CANNOT SHOW ENTITLEMENT TO RELIEF BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL

The Constitutions of both the United States and Michigan guarantee a right to the effective assistance of counsel.[15] Under what is commonly known as the *Strickland*[16] standard, in order to obtain a new trial based on the ineffective assistance of counsel, "a

---

[14] See *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023).

[15] *Yeager*, 511 Mich at 488, citing *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See also US Const, Am VI; Const 1963, art 1, § 20.

[16] *Strickland*, 466 US 668.

defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different."[17]  This means that defendant in this case is entitled to relief only if he can show both that his counsel's performance was constitutionally deficient and that counsel's error prejudiced him.[18]

I would resolve this case under the second *Strickland* prong.  Even assuming that counsel performed deficiently and the evidence from defendant's cell phone should not have been admitted at trial, defendant cannot show a reasonable probability that the outcome of the trial would have been different.  Putting aside the text messages, the dissenting Court of Appeals judge summed up the remaining evidence well:

> [D]efendant and DeGroff had direct access to the safes; the balance in the couple's joint bank account dramatically increased after the larceny absent explanation for the funds; defendant quit his job following the theft indicating that he "ran across some money"; defendant and DeGroff began making costly purchases after the larceny; the couple started regularly going out to dinner and the casino following the theft, spending enormous sums of money; items belonging to victim Billings other than the money were found in defendant's home; and the amounts spent by defendant and DeGroff corresponded to the sums stolen from Billings.[19]

---

[17] *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).  The *Strickland* standard applies to ineffective-assistance claims brought under the state Constitution as well as the federal Constitution.  See *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994).

[18] *Trakhtenberg*, 493 Mich at 51.

[19] *Carson*, ___ Mich App at ___ (REDFORD, J., dissenting); slip op at 14.

7

With this evidence presented at trial, there was no "reasonable probability"[20] that defendant would have been acquitted absent the evidence of the text messages. That is, in all likelihood, defendant would have been convicted anyway on the strength of the unchallenged evidence. I agree with dissenting Judge REDFORD's conclusion: "While the text messages undoubtedly strengthened the prosecution's case, they simply made an overwhelming case of guilt an insurmountable case of guilt."[21] Because defendant cannot show prejudice under *Strickland*, his ineffective-assistance theory of relief fails.[22]

---

[20] *Trakhtenberg*, 493 Mich at 51.

[21] *Carson*, ___ Mich App at ___ (REDFORD, J., dissenting); slip op at 14. The lead opinion observes that, in ruling on defendant's motion for a new trial, the trial court concluded that the text messages were " 'integral to the Prosecutor's case' " and that there was "a reasonable probability" of a different outcome had the evidence from the phone been suppressed. Although this is true, it is insignificant. To begin, the standard of review is de novo, so there is no deference to the trial court's legal conclusions. *LeBlanc*, 465 Mich at 579. Further, the context of the statements should be understood. The judge who made those statements was not the judge who presided over the trial and observed firsthand the evidence and witnesses presented at trial; it was the judge who presided over the proceedings on defendant's motion for a new trial. Thus, the statements did not come from a judge who had any unique insight into the events at trial or the evidence there presented. What is more, the trial court provided no reasoning or explanation for its statements that the text messages were integral to the case and that the reasonable-probability standard had been satisfied. Instead, the trial court appears to have made these statements in passing so that it could consider the application of the good-faith exception to the exclusionary rule and resolve defendant's motion on that basis. See *United States v Leon*, 468 US 897, 924; 104 S Ct 3405; 82 L Ed 2d 677 (1984).

[22] Although I believe that the prejudice prong of *Strickland* would be the clearest and best means by which to dispose of this case and thus would go no further, I do not disagree with the lead opinion's conclusion that defendant also fails to satisfy the deficient-performance prong because counsel did not provide objectively unreasonable performance by not challenging the search warrant on the basis of particularity.

## B.  IT IS INAPPROPRIATE FOR THE LEAD OPINION TO ADDRESS PARTICULARITY

The lead opinion resolves this appeal on the ground that defense counsel did not perform unreasonably by not raising the particularity issue.  But before reaching that outcome-determinative question, the lead opinion jumps ahead of itself to conduct a standalone Fourth Amendment particularity analysis of the search warrant for defendant's cell phone.  That analysis might be appropriate if particularity were before us as a discrete issue.  But it is not.  The Fourth Amendment particularity issue was not preserved in the trial court.  It comes before this Court solely through defendant's postconviction argument that he received ineffective assistance from his trial counsel.  Accordingly, we can consider it only through the framework of ineffective assistance.[23]

It can be appropriate to use an ineffective-assistance claim to consider underlying issues of substantive law—for instance, if a defendant's ineffective-assistance claim has been denied on the ground that the issue that counsel allegedly should have raised lacked merit.[24]  But that is different from what the lead opinion does here.  The lead opinion resolves the appeal by holding that defendant's counsel had no obligation to raise a particularity challenge to the search warrant for defendant's phone because it was not an obvious argument to be made under the then-existing facts and circumstances.  That should end the analysis in this appeal.  There is no sound jurisprudential reason to address

---

[23] The Court of Appeals majority similarly erred by addressing the Fourth Amendment issue as a standalone matter outside the context of defendant's ineffective-assistance theory.

[24] See generally *People v Hughes*, 506 Mich 512; 958 NW2d 98 (2020).

9

particularity because it has no effect on the outcome of the appeal and no relevance for the Court's decision.[25]

If counsel need not have raised an objection in order to provide constitutionally adequate representation, then it makes no difference whatsoever to the ineffective-assistance analysis whether the objection would have been meritorious. The necessity of raising a challenge is a logically required question that precedes the question of whether the challenge might have succeeded. If the answer, as here, is that it was not necessary to raise the challenge, then there is no logical or principled reason to go further than that. Given the lead opinion's ultimate conclusion that the particularity issue did not need to be raised, there is no excuse for conducting a backward analysis and reaching the merits of the particularity issue.

As a general matter, "this Court does not . . . declare principles or rules of law that have no practical legal effect on the case before it."[26] But with constitutional issues, this rule carries even greater weight. We have repeatedly emphasized that "[t]his Court will not unnecessarily decide constitutional issues"[27] and that "constitutional issues should not be addressed where the case may be decided on nonconstitutional grounds."[28] Yet that is

---

[25] See *People v Richmond*, 486 Mich 29, 34; 782 NW2d 187 (2010).

[26] *Id*. (quotation marks and citation omitted).

[27] *J & J Constr Co v Bricklayers and Allied Craftsmen, Local 1*, 468 Mich 722, 734; 664 NW2d 728 (2003).

[28] *People v Riley*, 465 Mich 442, 447; 636 NW2d 514 (2001). See *J & J Constr*, 468 Mich at 734 ("[I]t is an undisputed principle of judicial review that questions of constitutionality should not be decided if the case may be disposed of on other grounds."); *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993) ("[T]here exists a general presumption by this Court that we will not reach constitutional

10

precisely what the lead opinion does by opining that the search warrant in this case was invalid under the Fourth Amendment. I cannot agree with the decision to flout our long-established rule against addressing a constitutional question that has no bearing on our resolution of the matter before us. Because the lead opinion's conclusions about the search warrant's particularity have no conceivable relevance to the case's outcome, that part of the lead opinion appears to be an unconstitutional advisory opinion.[29] As we have said, "[p]erhaps the most critical element of the judicial power has been its requirement of a genuine case or controversy between the parties, one in which there is a real, *not a hypothetical*, dispute . . . ."[30] Because the validity of the search warrant is challenged only through defendant's theory of ineffective assistance, and defendant cannot prevail on that theory because the lead opinion holds that counsel had no professional obligation to raise the argument in question, the merits of the argument that counsel supposedly should have

---

issues that are not necessary to resolve a case."); *MacLean v State Bd of Control for Vocational Ed*, 294 Mich 45, 50; 292 NW 662 (1940) (declining to address constitutional issues "under the familiar rule that questions of constitutionality are not decided where a case may be disposed of without such a determination").

[29] See *Warner*, 514 Mich at 72-74 (ZAHRA, J., dissenting in part) (explaining that this Court's constitutional power does not extend to controversies not presented by the facts of the case). As I explained in my partial dissent in *Warner*, this use of "advisory opinion" reflects that term's common usage in the context of justiciability. See *id*. at 75 n 22. I do not refer to the opinions of this Court that the other branches of government may request "on important questions of law upon solemn occasions as to the constitutionality of legislation after it has been enacted into law but before its effective date." Const 1963, art 3, § 8.

[30] *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 292; 715 NW2d 846 (2006) (emphasis added; quotation marks and citation omitted); see also *id*. ("With regard to the necessity of a justiciable controversy, it derives from the constitutional requirement that the judiciary is to exercise the 'judicial power' and only the 'judicial power.' ").

11

made remain in the realm of the hypothetical. The Court has no authority to bypass procedural requirements simply because a plurality of justices wish to opine on a legal issue irrelevant to the appeal's outcome. Finally, the lead opinion's particularity analysis, at most, constitutes nonbinding dicta because it is "unnecessary to determine the case at hand and, thus, lack[s] the force of an adjudication."[31] In sum, the lead opinion exceeds this Court's authority by reaching and purporting to decide the particularity issue.[32]

## C. THE SEARCH WARRANT WAS SUFFICIENTLY PARTICULAR

Reaching the issue only to respond to the lead opinion, I disagree with its conclusion that the search warrant in this case failed the Fourth Amendment's particularity

---

[31] *People v Peltola*, 489 Mich 174, 190 n 32; 803 NW2d 140 (2011) (quotation marks and citation omitted).

[32] Although the lead opinion deems its particularity discussion " 'germane to . . . the controversy' " at hand, *ante* at 9 n 10, quoting *Detroit v Mich Pub Utilities Comm*, 288 Mich 267, 300; 286 NW 368 (1939) (additional quotation marks, citation, and emphasis omitted), this is not the case. The controversy at hand is whether defendant received ineffective assistance of counsel. Because the Court now holds that it was reasonable for counsel not to raise a particularity challenge, the potential merits of that particularity challenge have no relation to the question of ineffective assistance. When the lead opinion concludes that counsel had no obligation to raise an argument—even though it agrees with the merits of the argument—then the substantive merits simply are not germane to or intertwined with the basis for resolving the case. The rationale and conclusion would remain the same regardless of what the lead opinion concludes about the merits of the substantive argument. *Strickland* does not require or imply that a determination of a substantive argument's merits is necessary or appropriate if it was not objectively unreasonable performance not to raise the argument. See *Strickland*, 466 at 688-691. In short, the lead opinion does the analysis backward by resolving one issue and then, only after, proceeding to reach and decide a logically antecedent question in a way that removes any effect from its prior analysis.

requirement.[33]   The Fourth Amendment requires that search warrants "particularly

describ[e] the place to be searched, and the persons or things to be seized."[34]  In addition

to the items to be searched and seized, the particularity requirement requires that a search

warrant must also state with particularity "the alleged criminal activity justifying the

warrant."[35]  The United States Supreme Court has explained the purpose of the particularity

requirement as follows:

> The manifest purpose of this particularity requirement was to prevent general
> searches.  By limiting the authorization to search to the specific areas and
> things for which there is probable cause to search, the requirement ensures
> that the search will be carefully tailored to its justifications, and will not take
> on the character of the wide-ranging exploratory searches the Framers
> intended to prohibit.[36]

Courts applying the Fourth Amendment have consistently recognized that search

warrants must be construed in a practical manner without excessive strictness or

technicality.  This Court has said that "[s]earch warrants . . . are to be read in a common-

sense and realistic manner."[37]  According to the United States Court of Appeals for the

Second Circuit, a warrant satisfies the Fourth Amendment's particularity requirement if it

provides a description "with practical accuracy rather than absolute precision"; this

---

[33] Because defendant argues solely under the United States Constitution, the Court has no occasion to consider the Michigan Constitution's analogous search-and-seizure provisions.

[34] US Const, Am IV.

[35] *Hughes*, 506 Mich at 538.

[36] *Maryland v Garrison*, 480 US 79, 84; 107 S Ct 1013; 94 L Ed 2d 72 (1987).

[37] *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992) (quotation marks and citation omitted).

13

approach "extends to warrants authorizing the search of electronic devices."[38]  The United

States Court of Appeals for the Eighth Circuit has similarly explained that the particularity

requirement is one of "practical accuracy rather than a hypertechnical one."[39]  In *Andresen*

*v Maryland*, the Supreme Court of the United States made clear that warrant language must

be read in context.[40]  Accordingly, the Supreme Court held, a general reference to "crime"

at the end of the warrant in *Andresen* needed to be understood as meaning the crime

specified earlier in the warrant, and not as granting a general warrant to search for evidence

of any crime.[41]

In *Riley v California*, the Supreme Court held for the first time that searches of cell

phones require warrants.[42]  But the Supreme Court provided no guidance on how these

warrants should be worded or what their scope should look like.[43]  Thus, we must examine

other authorities to help discern the Fourth Amendment's requirements in this context.

Although there are no Michigan cases directly on point, our decision in *People v Hughes*,

issued six years after *Riley*, provides crucial guidance about how search warrants for digital

data should be focused so as to satisfy the particularity requirement.

---

[38] *United States v Tompkins*, 118 F4th 280, 287-288 (CA 2, 2024).

[39] *United States v Ivey*, 91 F4th 915, 918 (CA 8, 2024) (quotation marks and citation omitted) (holding that a warrant to search the defendant's entire phone for evidence of firearms crimes was sufficiently particular).

[40] *Andresen v Maryland*, 427 US 463, 480-481; 96 S Ct 2737; 49 L Ed 2d 627 (1976).

[41] *Id*.

[42] *Riley v California*, 573 US 373, 403; 134 S Ct 2473; 189 L Ed 2d 430 (2014).

[43] See *id*.

In *Hughes*, we considered a case involving a search warrant, substantially like the one at issue here, that permitted the search of the defendant's digital data specifically for evidence of drug trafficking.[44] After seizing the *Hughes* defendant's cell phone, a police officer used forensic software to search the phone for and found evidence of armed robbery—a crime for which the warrant did not authorize a search.[45] This Court held that the evidence of armed robbery was not within the scope of the search warrant and therefore was obtained in violation of the Fourth Amendment.[46] Because of this holding, the Court declined to consider whether the search warrant itself was overly broad.[47] That said, the Court offered guidance for how cell-phone searches should be limited:

> [A]s with any other search conducted pursuant to a warrant, a search of digital data from a cell phone must be "reasonably directed at uncovering" evidence of *the criminal activity alleged in the warrant* and . . . any search that is not so directed but is directed instead toward finding evidence of *other* and *unrelated* criminal activity is beyond the scope of the warrant.[48]

That is, under *Hughes*, the limitation for searching a cell phone is that the search must be reasonably directed toward uncovering evidence of the crime specified in the warrant.[49] This speaks to how law enforcement should execute a search warrant. But it

---

[44] See *Hughes*, 506 Mich at 519-520.

[45] *Id*. at 521.

[46] *Id*. at 550-551.

[47] *Id*. at 551 n 26.

[48] *Id*. at 538 (first emphasis added), quoting *United States v Loera*, 923 F3d 907, 917, 922 (CA 10, 2019).

[49] See *Hughes*, 506 Mich at 538.

also provides insight as to the proper focus of a warrant. If the standard is to be "reasonably directed at uncovering" evidence of the specified criminal activity,[50] then the focus of the warrant should be on that activity as well. The focus on a particular crime prevents the police from engaging in indiscriminate rummaging as would be allowed under an impermissible general warrant. As recognized in *Hughes*, forensic software allows law enforcement to isolate and view only the data that is relevant to the warrant.[51] This technology allows law enforcement to constrain their searches and exclude nonresponsive data; the question becomes whether the investigating officers have used the available resources in a manner reasonably directed toward uncovering evidence of the offense or offenses specified in the search warrant.[52]

Summing up its opinion, the *Hughes* Court reiterated that a warranted search of digital data is limited by the criminal activity alleged in the warrant:

> The ultimate holding of this opinion is simple and straightforward—a warrant to search a suspect's digital cell-phone data for evidence of one crime does not enable a search of that same data for evidence of another crime without obtaining a second warrant. Nothing herein should be construed to restrict an officer's ability to conduct a reasonably thorough search of digital cell-phone data to uncover evidence of the criminal activity alleged in a warrant, and an officer is not required to discontinue a search when he or she discovers evidence of other criminal activity while reasonably searching for evidence of the criminal activity alleged in the warrant. However, respect for the Fourth Amendment's requirement of particularity

---

[50] *Id*. (quotation marks and citation omitted).

[51] See *id*. at 520-521, 550 (discussing the use of a forensic software program called Cellebrite). The record suggests that similar software was used in this case when defendant's phone was analyzed by the Michigan State Police Computer Crimes Unit in Traverse City.

[52] See *id*. at 550.

16

and the extensive privacy interests implicated by cell-phone data as delineated by the United States Supreme Court's decision in *Riley v California* requires that officers reasonably limit the scope of their searches to evidence related to the criminal activity alleged in the warrant and not employ that authorization as a basis for seizing and searching digital data in the manner of a *general warrant* in search of evidence of any and all criminal activity.[53]

To refresh, the search warrant in this case allowed the investigating officers to search defendant's cell phone for the following:

Any and all records or documents pertaining to the investigation of Larceny in a Building and Safe Breaking. As used above, the term records or documents includes records or documents which were created, modified or stored in electronic or magnetic form and any data, image, or information that is capable of being read or interpreted by a computer. In order to search for any such items, searching agents may seize and search the following: cellular devices; [a]ny physical keys, encryption devices and similar physical items that are necessary to gain access to the cellular device to be searched or are necessary to gain access to the programs, data, applications and information contained on the cellular device(s) to be searched; [a]ny passwords, password files, test keys, encryption codes or other computer codes necessary to access the cellular devices, applications and software to be searched or to convert any data, file or information on the cellular device into a readable form; [t]his shall include thumb print and facial recognition and or digital PIN passwords, electronically stored communications or messages, including any of the items to be found in electronic mail ("e-mail"). Any and all data including text messages, text/picture messages, pictures and videos, address book, any data on the SIM card if applicable, and all records or documents which were created, modified, or stored in electronic or magnetic form and any data, image, or information that is capable of being read or interpreted by a cellular phone or a computer. [Asterisk omitted.]

The first sentence is the most important. It contains the cabining language that constrains the scope of the authorized search. The police were required to "reasonably direct[]" their search of the phone toward uncovering evidence of "Larceny in a Building

---

[53] *Id*. at 552-553.

and Safe Breaking."[54]  This was a "global modifier,"[55] which limited the scope of everything that followed to "the investigation of Larceny in a Building and Safe Breaking." Although the police could access "[a]ny and all records or documents" relating to these crimes, they could not seek evidence of any other crimes in their search.  True enough, the remaining language is expansive.  The warrant describes "records or documents" as used in the first sentence to include "records or documents which were created, modified or stored in electronic or magnetic form and any data, image, or information that is capable of being read or interpreted by a computer."  Practically, this scope would include all of the data stored on the phone.  The warrant continues, stating that "[i]n order to search for any such items"—i.e., the records or documents pertaining to the investigation of the specified crimes—"searching agents may seize and search" many other items.  But crucially, everything that follows is cabined by the qualification that it may be done "in order to search for" evidence of the already specified crimes for which probable cause exists.

That is, the all-encompassing breadth of items on the phone that could be searched under the warrant must be read in the context of the limiting language in the first sentence.[56] Investigators were authorized to search *only* for evidence of the two specifically identified crimes for which probable cause existed to search.  The warrant therefore provided the

---

[54] *Hughes*, 506 Mich at 538.

[55] *United States v Castro*, 881 F3d 961, 965 (CA 6, 2018).

[56] *Andresen*, 427 US at 480-481; *Castro*, 881 F3d at 965.

18

parameters for the police to "reasonably direct[]" their focus.[57]  In no sense, then, was this a general warrant to rummage through all the files on defendant's phone for evidence of anything that might incriminate him regarding some yet unknown criminal activity.  The lead opinion, like the Court of Appeals majority, applies an improperly narrow, technical, and context-free reading of the warrant language, an approach that contradicts established caselaw.[58]

It makes little sense to expect investigators to predict with any precision what form evidence will take or where the relevant data might be found on a cell phone. "[A] criminal suspect will not always store or organize incriminating information on his or her digital devices in the most obvious way or in a manner that facilitates the location of that information."[59]  The relative ease with which incriminating information might be hidden in a digital device should not raise a shield against an investigation where probable cause

---

[57] *Hughes*, 506 Mich at 538.

[58] See *Russo*, 439 Mich at 603 (requiring a commonsense and reasonable reading of search warrants); *Andresen*, 427 US at 480-481 (instructing that warrant language must be read in context); *Castro*, 881 F3d at 965 ("[Warrants] need not meet the rigors of Roget, Merriam, Webster, Strunk, and White.  A commonsense contextual reading usually suffices, and usually gets the point the magistrate and officer sought to express.").  The Court of Appeals majority disregarded the essential cabining language as a meaningless "small guardrail" that "was negated by the ensuing instruction to search for such items by searching and seizing the entirety of the phone's contents." *Carson*, ___ Mich App at ___; slip op at 12.  This reasoning was circular.  The Court of Appeals concluded that the cabining language could not provide meaningful constraint because of the breadth of the subsequent language.  *Id*.  But the subsequent language could only be understood to be as broad as the Court of Appeals majority deemed it if the cabining language was first read as providing no meaningful constraint.

[59] *Hughes*, 506 Mich at 540-541.  See also *United States v Mann*, 592 F3d 779, 782 (CA 7, 2010) ("Unlike a physical object that can be immediately identified as responsive to the warrant or not, computer files may be manipulated to hide their true contents.").

has been established.[60]  In *United States v Bass,* the United States Court of Appeals for the Sixth Circuit recognized both the problem and the solution as follows:

> Here, the warrant authorized the search for any records of communication, indicia of use, ownership, or possession, including electronic calendars, address books, e-mails, and chat logs.  At the time of the seizure, however, the officers could not have known where this information was located in the phone or in what format.  Thus, the broad scope of the warrant was reasonable under the circumstances at that time.[61]

The Supreme Court of the United States has long recognized that the scope of a search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found."[62]  For physical objects, this means that the police may not search in places where the sought-after evidence would not reasonably be found. "Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase."[63]  Similarly, the search of physical premises generally extends to the "entire area in which the object of the search may be found . . . ."[64]

---

[60] See *Andresen,* 427 US at 481 n 10 ("The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession."); *United States v Stabile,* 633 F3d 219, 237 (CA 3, 2011) (noting that "criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity").

[61] *United States v Bass,* 785 F3d 1043, 1050 (CA 6, 2015).

[62] *Garrison,* 480 US at 84 (quotation marks and citation omitted).

[63] *United States v Ross,* 456 US 798, 824; 102 S Ct 2157; 72 L Ed 2d 572 (1982).

[64] *Id.* at 820.

But because the digital world lacks the physical constraints that might otherwise guide the search of a tangible place, it is much harder to use the sought-after evidence's form or location as touchstones to limit a search of a digital device.[65] A given file could contain just about anything, and the evidence described in a warrant could exist just about anywhere in digital data.[66] Thus, it makes ample sense not to limit the scope of a digital search to specified areas or files in a cell phone or computer.[67] Instead of location, the logical limiting factor is the relationship of the file's contents to the specific crime.[68] In other words, as we suggested in *Hughes*, the focus of a reviewing court should be on the search method and how it is reasonably directed toward uncovering evidence of the offense for which probable cause exists.[69] The United States Court of Appeals for the Tenth Circuit has explained its adoption of this type of particularity focus on the search method and not items identified in the search warrant in the context of digital searches:

> We recognize the general rule that "investigators executing a [sufficiently particular] warrant can look anywhere where evidence described in the warrant might conceivably be located." Even so, we have cautioned that this traditional analysis of a warrant's physical scope is "less effective in the

---

[65] See Kerr, *Executing Warrants for Digital Evidence: The Case for Use Restrictions on Nonresponsive Data*, 48 Tex Tech L Rev 1, 14-15 (2015).

[66] See *United States v Bishop*, 910 F3d 335, 336-337 (CA 7, 2018).

[67] See *id*.

[68] Other limitations, such as temporal limitations, can also be helpful. But that is not to say that they are generally required for cell-phone searches. See, e.g., *Castro*, 881 F3d at 965; *Bishop*, 910 F3d at 336-337.

[69] See *Hughes*, 506 Mich at 538. I do not argue, as the lead opinion suggests, that the particularity requirement and the direction of search efforts should be separated or that a warrant need not be sufficiently particularized. See *ante* at 23 n 21. Instead, I offer a different approach to what particularity means in this context.

electronic-search context." This is so "[g]iven the enormous amount of data that computers can store and the infinite places within a computer that electronic evidence might conceivably be located." As such, our circuit's reasonableness analysis for electronic searches has trended away from focusing on the "what" permitted under a search warrant; instead, "we have focused on 'how' the agents carried out the search, that is, the reasonableness of the *search method* the government employed."[70]

As we recognized in *Hughes*, a primary way that investigating officers can reasonably direct their searches of digital devices to evidence of specific crimes is by using forensic software to isolate relevant evidence.[71] That way, law enforcement can avoid evidence unrelated to the offense or offenses for which there is probable cause to search. The employment of forensic software—and evidence of how officers have used that software—is crucial for determining whether the search method remains within the constraints of reasonableness for Fourth Amendment purposes.[72] Indeed, that was the basis for this Court's holding in *Hughes*; the investigating officers there had used forensic software to search for evidence of a crime not contained within the search warrant.[73]

Inexplicably, the lead opinion does not recognize the existence or use of such forensic software for cell-phone searches. Instead, the lead opinion buys into the unrealistic hysteria of the Court of Appeals majority that officers were presumably rummaging through every

---

[70] *United States v Salas*, 106 F4th 1050, 1060 (CA 10, 2024), quoting *Loera*, 923 F3d at 916-917 (alterations in *Salas*).

[71] See *Hughes*, 506 Mich at 520-521 (explaining the use of Cellebrite forensic software to exclude nonresponsive data from a search for evidence for a specific crime). See also Kerr, *Executing Warrants*, 48 Tex Tech L Rev at 7-8 (explaining "typical" practices for an electronic search, which include creating a mirror image of the device's contents and using forensic software to isolate evidence that is responsive to the warrant).

[72] See *Hughes*, 506 Mich at 552-554; *Salas*, 106 F4th at 1060.

[73] *Hughes*, 506 Mich at 552-554.

file on defendant's cell phone looking for " 'anything, but nothing in particular . . . .' "[74] This assertion disregards the reality of how such searches are typically conducted[75] and, apparently, how the search in this case was conducted. The lead opinion concludes that there was no meaningful constraint on the investigators' discretion because it simply refuses to acknowledge the constraints that existed.

It is also remarkable that the lead opinion's particularity analysis—like that of the Court of Appeals majority—does not rely on on-point caselaw from the federal courts of appeals, despite the fact that it is the federal Constitution under consideration.[76] This avoidance is perhaps unsurprising, however, as it appears that every federal court of appeals to have definitively answered the question has signaled that a warrant's specification of the offense to be searched for in a digital device satisfies the Fourth Amendment's particularity

---

[74] *Ante* at 19 n 16, quoting *Carson*, ___ Mich App at ___; slip op at 12.

[75] See *Executing Warrants*, 48 Tex Tech L Rev at 7-8 (2015).

[76] Of course, as explained, the Court has no occasion to consider the Fourth Amendment issue at all.

requirement.[77]  If the lead opinion were to engage with these cases, it would have to explain its disagreement with them.[78]

---

[77] See *Tompkins*, 118 F4th at 289 (deeming a search warrant for a defendant's entire phone sufficiently particular because it "specifies that forensic examination of the cellular phone and any associated electronic storage is authorized for the purpose of identifying digital information evidencing a specific offense") (Second Circuit); *Stabile*, 633 F3d at 237, 239 (noting that "because criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity, a broad, expansive search of the hard drive may be required" and upholding a search where "the scope of the consent and state search warrant [was] limited to evidence of financial crimes") (Third Circuit); *United States v Cobb*, 970 F3d 319, 328 (CA 4, 2020) (holding that a search warrant was valid because it "confined the executing officers' discretion by allowing them to search the computer and seize evidence of a specific illegal activity—[the victim's] murder on September 7, 2014") (Fourth Circuit); *Castro*, 881 F3d at 965 ("A warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime.") (Sixth Circuit); *Bishop*, 910 F3d at 337 (holding that a warrant to search a cell phone was lawful because it is enough "if the warrant cabins the things being looked for by stating what crime is under investigation") (Seventh Circuit); *Ivey*, 91 F4th at 918 (holding that a warrant to search anywhere in a defendant's cell phone for evidence related to firearms possession satisfied the particularity requirement because "the [particularity] requirement is one of 'practical accuracy rather than a hypertechnical one' ") (Eighth Circuit) (citation omitted); *United States v Palms*, 21 F4th 689, 698-699 (CA 10, 2021) (holding that a warrant to search a defendant's entire phone for evidence of human trafficking was sufficiently particular) (Tenth Circuit).  See also *United States v Jackson*, 118 F4th 447, 450, 453-454 (CA 1, 2024) (upholding a search based on a warrant to seize and search " 'mobile devices' " for " 'any and all computer-related documentation, records, documents, material, proceeds, and passwords or other data security devices related to the possession and transfer of child pornography' " by applying the good-faith exception without "definitively determin[ing]" whether the particularity requirement was satisfied) (First Circuit); *United States v Morton*, 46 F4th 331, 335 (CA 5, 2022) (en banc) (resolving a case en banc using the good-faith exception where the vacated panel decision had found that a lack of probable cause to search a certain category of files on the defendant's phone rendered part of a search warrant invalid) (Fifth Circuit); *United States v Smith*, 467 US App DC 105, 111-114; 108 F4th 872 (2024) (using the good-faith exception to uphold a broad search of cell phones and digital data based on an expansive warrant while declining to address the merits of the defendant's particularity challenge) (DC Circuit).

[78] The lead opinion questions the value of these federal cases without raising any significant disagreement with them.  The opinion notes that *Stabile* was decided before *Riley*.  This is true, but *Stabile*'s principles well apply to searches of cell phones along with other digital

24

I am also puzzled by the lead opinion's admonition that law enforcement must "provide the most specific description possible" in search-warrant affidavits.[79] To what degree must officers exhaust the bounds of possibility before an affidavit is sufficiently specific? It would almost always be possible to provide a more specific description, however unreasonable or immaterial that specificity might be. Thus, a court could invalidate practically any search warrant on the basis that more specificity could have been provided. The lead opinion gives little guidance for how or where to draw lines about particularity, except for tautological admonitions that more specificity is better. I fear that the lead opinion's approach to particularity will accomplish little more than impairing investigators' ability to conduct narrowly targeted and particularized forensic searches of cell phones, all while rewarding criminals who are clever enough to conceal evidence of illicit activities in areas of their phones where the police would not guess to look.[80]

In sum, although the lead opinion improperly addresses the issue, the warrant in this case satisfied the Fourth Amendment's particularity requirement because it described and limited the place to be searched (defendant's phone) and the items to be searched for and seized as evidence (records or documents relating to larceny in a building and safebreaking), and it specified the crimes regarding which the search was being conducted.

---

devices. It is also curious that the lead opinion handwaves away federal cases as "nonbinding," *ante* at 20 n 17, while simultaneously relying primarily on nonbinding cases from the courts of other states. There should be little surprise that all these cases are nonbinding. That is the nature of addressing an issue that has not been subject to a binding decision from this Court or the Supreme Court of the United States.

[79] *Ante* at 22.

[80] See *Hughes*, 506 Mich at 540-541; *Stabile*, 633 F3d at 237; *Mann*, 592 F3d at 782.

Accordingly, the warrant "reasonably directed" the officers' efforts toward evidence of the crimes for which there was probable cause to search.[81] If the matter were properly before us, I would cleave to the instructive value of our own caselaw along with the heavy weight of federal authority and uphold the facial validity of the search warrant.

## IV. CONCLUSION

I agree with the lead opinion that defendant is not entitled to relief based on his ineffective-assistance challenge. I therefore concur in the disposition of the case. But the lead opinion does not stop there. Instead, it addresses a hypothetical question of constitutional dimension that has no plausible bearing on the resolution of this case. And not only does the lead opinion exceed its authority in answering that question, it answers the question incorrectly. Because I disagree with these decisions, I decline to join the lead opinion.

Brian K. Zahra

---

[81] *Hughes*, 506 Mich at 538.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                                   No. 166923

MICHAEL GEORGIE CARSON,

      Defendant-Appellee.

_____

BERNSTEIN, J. (*concurring in the result*).

      I agree with this Court's decision to reverse the judgment of the Court of Appeals and remand to that same court for further proceedings because defendant's ineffective-assistance-of-trial-counsel claim fails under the standard set by *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). I write separately because, like Justice ZAHRA, I disagree with the lead opinion's decision to reach the question of whether the search warrant at issue in this case was sufficiently particular to satisfy the requirements of the Fourth Amendment. Because this case is resolved on the threshold issue of ineffective assistance of trial counsel, I believe that this Court should refrain from opining on the particularity issue, which was unpreserved.

      As a longstanding principle, this Court has refused to " 'declare principles or rules of law that have no practical legal effect in the case before' it." *People v Richmond*, 486 Mich 29, 34; 782 NW2d 187 (2010), quoting *Federated Publications, Inc v Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002), abrogated in part on other grounds by *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463 (2006). By addressing the Fourth

Amendment particularity issue despite concluding that trial counsel's performance was reasonable, I fear that the analysis in Part III of the lead opinion constitutes mere dicta. See *People v Peltola*, 489 Mich 174, 190 n 32; 803 NW2d 140 (2011), quoting *Wold Architects & Engineers v Strat*, 474 Mich 223, 232 n 3; 713 NW2d 750 (2006) ("Obiter dicta are not binding precedent. Instead, they are statements that are unnecessary to determine the case at hand and, thus, 'lack the force of an adjudication.' ").

The lead opinion states that its analysis does not constitute dicta "because the Fourth Amendment issue is germane to our ultimate holding that defendant's counsel did not perform ineffectively." *Ante* at 9 n 10, citing *Detroit v Mich Pub Utilities Comm*, 288 Mich 267, 299-300; 286 NW 368 (1939). "Germane" is defined as "being at once relevant and appropriate[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). However, the lead opinion concludes that defendant's counsel was not unreasonable for failing to raise the particularity issue in light of the legal landscape at the time the instant case arose. Therefore, this Court's input on the particularity issue is not relevant and appropriate but superfluous to its resolution of this case. Not only does it fail to practically influence the outcome of the case, but there is also no manner in which discussion of the particularity issue *could* influence the outcome of the case. It is categorically dictum.

While I do not necessarily disagree with the lead opinion's analysis of the particularity issue, I would refrain from addressing this question until this Court is presented with a case in which our resolution of this issue will have the force of law. Accordingly, I concur in the result of the lead opinion.

Richard H. Bernstein

2

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                        No. 166923

MICHAEL GEORGIE CARSON,

        Defendant-Appellee.

_____

BOLDEN, J. (*concurring in part and dissenting in part*).

I agree with the conclusion reached in the lead opinion that the search warrant in this case violated the particularity requirement of the Fourth Amendment. However, I respectfully disagree with Part IV(C) of the lead opinion. That section concludes that defendant does not prevail on his claim of ineffective assistance of counsel because he has not established that defense counsel's performance—the failure to move to suppress the cell-phone records, including the incriminating text messages, obtained through the deficient search warrant—fell below an objective standard of reasonableness. In other words, the lead opinion concludes that defense counsel's decision to not challenge the evidence obtained from an insufficiently particular search warrant was reasonable. I disagree.

In my view, the Court of Appeals majority applied the proper analysis and reached the appropriate conclusion, and its decision is well-reasoned and supported by the whole record. As the Court of Appeals recognized, the *Ginther*[1] hearing testimony strongly

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

supports the panel's conclusion that defense counsel's "failure to seek exclusion of the phone's contents was based on a misunderstanding of the law rather than trial strategy," *People v Carson*, ___ Mich App ___, ___; ___ NW3d ___ (February 15, 2024) (Docket No. 355925); slip op at 17, or, as the lead opinion puts it, "an exercise of reasonable professional judgment under the facts and circumstances that existed when the decision was made," *ante* at 30.[2]

I also believe that the Court of Appeals properly analyzed the prejudice prong of defendant's ineffective-assistance-of-counsel claim. See *Carson*, ___ Mich App at ___; slip op at 18 ("While the properly admitted evidence was persuasive, the tainted evidence

---

[2] The lead opinion recognizes that "a motion to suppress based on the lack of particularity in the search warrant at issue would not have been substantively meritless," *ante* at 29, yet nonetheless concludes that defense counsel's failure to challenge the inadequate search warrant "was not based on a misunderstanding of the law as it existed at the time and may be fairly characterized as an exercise of reasonable professional judgment under the facts and circumstances that existed when the decision was made," *ante* at 30. However, the constitutional requirement that search warrants be sufficiently particular is longstanding, and it is well settled that a search may not stand on a general warrant. See *People v Musk*, 221 Mich 578, 580-581; 192 NW 485 (1922) ("The constitutional requirement is a description which particularly points to a definitely ascertainable place and so as to exclude all others. The writ should not leave the place to be searched to the discretion of the officer; and the modern authorities are unanimous in holding that a search warrant directing an officer to search places generally is clearly illegal.") (quotation marks and citation omitted); see also *People v Hughes*, 506 Mich 512, 542; 958 NW2d 98 (2020), quoting *People v Herrera*, 357 P3d 1227, 1228; 2015 CO 60 (Colo, 2015) (citing *Herrera* with approval and summarizing its holding as follows: "[A]llowing a search of an entire device for evidence of a crime based upon the possibility that evidence of the crime could be found anywhere on the phone and that the incriminating data could be hidden or manipulated would 'render the warrant a general warrant in violation of the Fourth Amendment's particularity requirement[.]' "). Moreover, this Court has recognized that a counsel's error or omission that is "inconsistent or based on a misunderstanding of the law" may be sufficient to establish that their performance "fell below the objective standard of reasonableness required by *Strickland* [*v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984)]." *People v Yeager*, 511 Mich 478, 491, 494; 999 NW2d 490 (2023).

was essentially definitive. Indeed, defendant and [defendant's romantic partner] each made several statements that could fairly be characterized as confessions."). To demonstrate prejudice, a defendant must establish that there exists "a reasonable probability that the outcome would have been different" but for counsel's error. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). I agree with the Court of Appeals majority that defendant has shown a reasonable probability that the result of the proceeding would have been different had trial counsel moved to suppress the text messages. See *Carson*, ___ Mich App at ___; slip op at 18 (concluding that "a not guilty verdict would have been shocking" when the text messages are considered in conjunction with the properly admitted evidence).

Therefore, I would affirm the Court of Appeals' decision as to defendant's claim of ineffective assistance of counsel. I would also affirm the Court of Appeals' holding that the good-faith exception to the exclusionary rule does not apply "because this was a facially invalid general warrant upon which no reasonable officer could have relied in objective good faith." *Id*. at ___; slip op at 14. See also *United States v Leon*, 468 US 897, 923; 104 S Ct 3405; 82 L Ed 2d 677 (1984) ("[D]epending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.").

Additionally, I would conclude that the severance doctrine is inapplicable in this case. Although the prosecution did not raise this argument below, Judge REDFORD

concluded that, "[t]o the extent that the search warrant satisfied the Fourth Amendment only with respect to retrieval of the text messages, the constitutionally infirm portion of the warrant could be severed, allowing admission of the text messages." *Carson*, ___ Mich App at ___ (REDFORD, J., dissenting); slip op at 1.

In *People v Keller*, 479 Mich 467; 739 NW2d 505 (2007), when evaluating the constitutionality of a search warrant issued to search a defendant's home for evidence of marijuana manufacturing and distribution, this Court noted that even if there had not been probable cause to suspect illegal *distribution*, the part of the warrant addressing illegal *manufacturing* would have been valid under the severance doctrine, which provides that " 'the infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant, but does not require the suppression of anything described in the valid portion of the warrant . . . .' " *Id*. at 478, quoting *United States v Sells*, 463 F3d 1148, 1150 (CA 10, 2006) (additional quotation marks and citation omitted). Determining whether the severance doctrine applies is a "multiple-step analysis" and requires the following:

> First the court must divide the warrant into categories. Then, the court must evaluate the constitutionality of each category. If only some categories are constitutional, the court must determine if the valid categories are distinguishable from the invalid ones and whether the valid categories "make up the great part of the warrant." [*Keller*, 479 Mich at 478-479, quoting *Sells*, 463 F3d at 1151.]

The *Sells* court also explained that "[i]f no part of the warrant particularly describes items to be seized for which there is probable cause, then severance *does not* apply . . . ." *Sells*, 463 F3d at 1151 (emphasis added). In this case, I would conclude that the severance doctrine does not apply because the entire search warrant failed to satisfy the particularity

4

requirement of the Fourth Amendment. In other words, there are no constitutional categories or valid portions of the search warrant that may be severed. See *id.*; *Keller*, 479 Mich at 489 (M. F. CAVANAGH, J., dissenting), quoting *United States v George*, 975 F2d 72, 79-80 (CA 2, 1992) (" 'The [severance] doctrine is not available where no part of the warrant is sufficiently particularized, where no portion of the warrant may be meaningfully severed, or where the sufficiently particularized portions make up only an insignificant or tangential part of the warrant.' ").

Accordingly, while I agree with the analysis in Part III of the lead opinion, I respectfully dissent from Part IV(C), and I would affirm the Court of Appeals' decision in full.

Kyra H. Bolden

HOOD, J., did not participate because the Court considered this case before he assumed office and because he was on the Court of Appeals panel.